[Cite as *Zhelezny v. Olesh*, 2013-Ohio-4337.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Vladimir Zhelezny, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 12AP-681 |
| | | (C.P.C. No. 11CVC-04-5202) |
| Arkadiy Olesh et al., | : | |
| | | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 30, 2013

*Jeffery K. Lucas*, for appellant.

*Law Office of Vadim N. Levtonyuk, LLC*, and *Vadim Levtonyuk*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Plaintiff-appellant, Vladimir Zhelezny ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas dismissing his complaint pursuant to Civ.R. 12(B) and (C).

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Defendant-appellee, Grace Evangelical Church ("Grace" or "the church"), is an Ohio nonprofit corporation. This case arises out of an ongoing dispute between appellant and the church, its Pastor Arkadiy Olesh, and various church leaders.[1]

---

[1] The named defendants-appellees are: Grace Evangelical Church; Pastor Arkadiy Olesh; Assistant Pastor, Aleksander Shishlo; church usher Vasily Shishlo; church secretary Genadiy Shishlo; and church members, Sergey Chmil, Vladimir Chmil, and Yuriy Olesh ("appellees"). Although the complaint also identifies as defendants, City of Columbus, City Attorney, and Deputy John Doe, the governmental defendant are no longer parties herein.

According to appellees, appellant is a disgruntled former member of the church who has engaged in various forms of public protest against the church and its pastor, which have resulted in heated arguments, threats of violence and physical confrontations. Appellees maintain that in 2008, Pastor Olesh sent appellant a letter ("ban letter") informing him that his access to the church was to be severely restricted for one year. Appellees state that, at the end of that year, a second letter was sent extending the ban another year.[2]

{¶ 3} On April 18, 2010, an unidentified deputy sheriff removed appellant from church property after an altercation with Sergey Chmil. A charge of criminal trespass was filed against appellant as a result of the incident but the prosecutor dismissed the case against appellant on September 13, 2010. Thereafter, in February 2011, appellant was involved in a physical altercation with Aleksander Shishlo while appellant was at the church.

{¶ 4} On April 26, 2011, appellant filed his complaint in this case alleging the following causes: (1) assault and battery; (2) extortion; (3) malicious prosecution; (4) violation of civil rights; (5) civil conspiracy; and (6) intentional infliction of emotional distress.[3] The complaint seeks monetary damages from the church under the doctrine of respondeat superior.

{¶ 5} Following a hearing in chambers, the trial court granted appellees' joint motion for a temporary restraining order on June 20, 2011. The order states that appellant "shall be immediately and temporarily restrained and enjoined from entering on or trespassing on the property of Grace." Although appellant initially consented to the restraining order, he subsequently moved the trial court to dissolve the order and to deny appellees' motion for a preliminary injunction. The trial court subsequently denied appellees' joint motion for a preliminary injunction on the stated grounds that appellees had not asserted a counterclaim for injunctive relief. (Aug. 2, 2011 Magistrate's Decision.)

{¶ 6} On November 10, 2011, appellees filed a joint motion to dismiss the complaint pursuant to Civ.R. 12(B)(1) and (6), 12(C), 12(H)(2) and (3). On July 19, 2012,

---

[2] Evidentiary materials in support of appellees' statements of fact are not part of the pleadings in this case and shall not be considered by the court in reviewing the merits appellees' motion for judgment on the pleadings.

[3] Appellant does not appeal the trial court's dismissal of the extortion claim.

the trial court issued a "Decision and Entry Granting Defendants' Joint Motion for Judgment on the Pleadings." Therein, the trial court dismissed each of the causes alleged in the complaint. The trial court also determined that it lacked jurisdiction over several of appellant's causes of action due to the ecclesiastical abstention doctrine.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Appellant assigns the following as error:

[I.] The trial court commits error in granting a motion to for judgment on the pleadings pursuant to Civ. R. 12(C) when the court relies on facts not contained in the pleadings and weights the credibility of the evidence.

[II.] The trial court committed error in granting a Motion to Dismiss pursuant to Civ. R. 12(C) finding that there were insufficient operative facts when the Complaint contained the necessary operative facts to support each claim.

[III.] The trial court commits error in granting a Motion to Dismiss pursuant to Civ. R. 12(C) finding that the claims are barred by the applicable statute of limitations.

(Sic passim.)

## III. STANDARD OF REVIEW

{¶ 8} Under Civ.R. 12(C), a party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohi-2048, ¶ 5 (10th Dist.). In ruling on the motion for judgment on the pleadings, the court is permitted to consider both the complaint and answer. *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 570 (1996). When presented with such a motion, a court must construe all the material allegations of the complaint as true, and must draw all reasonable inferences in favor of the nonmoving party. *Id.*, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165 (1973); *Whaley v. Franklin Cty. Bd. of Commrs.,* 92 Ohio St.3d 574, 581 (2001). The court will grant the motion if it finds, beyond doubt, that the plaintiff can prove no set of facts in support of the claim(s) that would entitle him or her to relief. *State ex rel. Midwest Pride IV, Inc.* at 570.

{¶ 9} A motion for judgment on the pleadings tests the allegations of the complaint and presents a question of law. *Peterson* at 166, citing *Conant v. Johnson*, 1 Ohio App.2d 133 (4th Dist.1964). Thus, our review of a decision to grant judgment on the pleadings is de novo. *See Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18, citing *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

{¶ 10} Insofar as the trial court determined that it did not have jurisdiction of claims that involved purely ecclesiastical matters, our review is also de novo. *Crosby-Edwards v. Ohio Bd. of Embalmers and Funeral Dirs.,* 175 Ohio App.3d 213, 2008-Ohio-762, ¶ 21 (10th Dist.). Furthermore, when a trial court determines its subject-matter jurisdiction, it is not confined to the allegations of the complaint and it may consider any pertinent evidentiary materials in ruling upon a motion to dismiss. *See, e.g.*, *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 110 (1990); *Southgate Dev. Corp. v. Columbia Gas Transmission Corp.*, 48 Ohio St.2d 211 (1976).

## IV. LEGAL ANALYSIS

{¶ 11} For purposes of clarity, we will consider appellant's assignments of error out of order. In appellant's third assignment of error, appellant contends that the trial court erred in ruling that the statute of limitations barred his claims for assault and battery. We agree with the trial court.

{¶ 12} Assault is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. *Smith v. John Deere Co.,* 83 Ohio App.3d 398, 406 (10th Dist.1993). Battery is an intentional contact with another that is harmful or offensive. *Love v. Port Clinton,* 37 Ohio St.3d 98, 99 (1988); *Clime v. M.M.S. Investments, Inc.*, 10th Dist. No. 91AP-543 (Oct. 8, 1991). "A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love* at 99, citing Restatement of Law 2d, Torts, Section 13, at 25 (1965).

{¶ 13} R.C. 2305.03(A) provides:

> Except as provided in division (B) of this section and unless a different limitation is prescribed by statute, a civil action may be commenced only within the period prescribed in sections 2305.04 to 2305.22 of the Revised Code. If interposed by

> proper plea by a party to an action mentioned in any of those sections, lapse of time shall be a bar to the action.

{¶ 14} Where defendant's answer asserts a statute of limitations defense, such a defense is available as grounds for a motion to dismiss brought pursuant to Civ.R. 12(C). *See e.g.*, *Rayess; Anetomang v. OKI Sys. Ltd.,* 10th Dist. No. 10AP-1182, 2012-Ohio-822. The statute of limitations for assault and battery is one year. *See* R.C. 2305.111. *See also Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 810 (10th Dist.2008). The trial court determined that the statute of limitations barred many of the claims of assault and battery alleged in the complaint. In fact, the trial court found that the only timely filed claim arose out an altercation between appellant and Aleksander Shishlo that allegedly occurred in February 2011. We agree.

{¶ 15} Upon review of the complaint, it is clear that each of the allegations of assault and/or battery , or the threat of such contact, accrued more than one year before plaintiff filed his complaint. Thus the allegations of plaintiff's complaint conclusively establish that such claims are barred by the applicable statute of limitations. Appellant now argues that a different limitations period applies inasmuch as the facts underlying his claims of assault and battery also support his other claims for relief. Appellant, however, does not cite any legal precedent that would justify the application of a longer statutory period. In short, we hold the applicable statute of limitations is the one found in R.C. 2305.11.[4] Thus, the trial court did not err in applying the one-year limitations period and dismissing all but the most recent of appellant's claims for assault and battery.

{¶ 16} For the foregoing reasons, appellant's third assignment of error is overruled.

{¶ 17} In appellant's first assignment of error, appellant contends that the trial court erred when it relied on matters outside the pleadings in granting appellees' motion for judgment on the pleadings. Specifically, appellant contends that the trial court

---

[4] Moreover, the applicable statute of limitations for a civil conspiracy is the statute applicable to the underlying cause of action. *Cully v. St. Augustine Manor,* 8th Dist. No. 67601 (Apr. 20, 1995); *Davis v. Clark Cty. Bd. of Commrs.*, 2d Dist. No. 2011-CA-84, 2013-Ohio-2758, ¶ 19.

erroneously relied on the "ban letter" in dismissing his claim of malicious prosecution and his timely filed claim for assault and battery. The court agrees.

### A. Assault and Battery

{¶ 18} Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law. *Coleman v. Beachwood,* 8th Dist. No. 92399, 2009-Ohio-5560, ¶ 17, citing *Burnside v. Leimbach*, 71 Ohio App.3d 399, 403 (10th Dist.1991). " 'Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.' " *Id.*, quoting *State ex rel. Midwest Pride IV, Inc.* at 570.

{¶ 19} The trial court found that appellant knew, when he entered church property in February 2011, that he was trespassing on church property and that it was possible that a church employee would forcibly eject him from the premises. In dismissing the claim pursuant to Civ.R. 12(C), the court determined that plaintiff either "consented to the possibility of removal from the premises," or "assumed the risk of physical contact" and dismissed appellant's remaining claim for assault and battery. (July 19, 2012 Decision and Entry, 6.) In making this determination, the trial court expressly relied on the text of the ban letters. (July 19, 2012 Decision and Entry, 4.)

{¶ 20} Although the ban letters are part of the trial court record as exhibits to the deposition testimony of Valentina Olesh, the ban letters are not referenced in the pleadings, nor are they attached as exhibits thereto. Appellant does not acknowledge in his complaint that he was banned from the church nor does he specifically state that his membership was revoked. While it is reasonable to infer from the facts set forth in the complaint that appellant's right to access the church grounds was restricted in some fashion for a period of time, he still refers the Grace Evangelical Church as "his church." (Complaint, 27.) Consequently, in the context of ruling upon a motion for judgment on the pleadings, the trial court erred when it expressly relied on the ban letters in concluding that appellant knew he was banned from the church in February 2011.

{¶ 21} Moreover, when the facts alleged in the pleadings are viewed in appellant's favor, there is no support for a finding either of primary assumption of the risk or consent.

Primary assumption of the risk is a defense typically applied in a negligence case involving recreational or sporting activities. *See Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990); *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431 (1996); 2 Restatement of the Law 2d, Torts, Section 10, at 892 (1977). Appellant alleges at paragraph 45 of the complaint that "[o]n or about February, 2011, Shishlo made unwelcome and unwarranted physical contact on plaintiff by pushing him hard inside of Grace." Such an allegation, if believed, permits an inference that the physical contact by Shishlo in February 2011, was non-consensual. Based upon the facts alleged in the complaint, we hold that the trial court erred when it granted Shishlo's motion for judgment on the pleadings as to the timely filed claim of battery.

{¶ 22} Appellant's first assignment of error is sustained as it relates to appellant's timely filed claim for assault and battery arising from the February 2011, altercation with Shishlo.

## B. Malicious Prosecution

{¶ 23} In both appellant's first and second assignments of error, he takes exception to the trial court's dismissal of his claim for malicious prosecution. Appellant argues in his first assignment of error that the trial court erred when it considered the ban letters in ruling upon appellees' motion for judgment on the pleadings, and in his second assignment of error appellant argues that the trial court erred when it concluded that his complaint fails to state a claim for relief. We will consider these assignments of error together as they relate to the malicious prosecution.

{¶ 24} The claims of malicious criminal prosecution allows the complainant to seek redress for harm to complainant's dignity and reputation occasioned by the misuse of criminal proceedings. *Froehlich v. Ohio Dept. of Mental Health,* 114 Ohio St.3d 286, 2007-Ohio-4161, citing *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142 (1990). "[M]alicious prosecution in a criminal setting requires proof of three essential elements: '(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.' " *Id.* at ¶ 10, quoting *Trussell* at 146. The absence of probable cause is "the real gist of the action." *Melanowski v. Judy*, 102 Ohio St. 153, 155 (1921).

{¶ 25} According to the complaint, appellees falsely prosecuted appellant for a trespass that allegedly occurred on April 18, 2010. The trial court dismissed appellant's claim for malicious prosecution because he failed to allege sufficient facts to permit an inference of either the lack of probable cause or the existence of malice. In making its ruling, the court expressly relied upon the ban letters. (Trial Court Decision, 8.) The trial court determined that on April 18, 2010, appellant entered upon church property with knowledge the he was in violation of the ban letter. (Trail Court Decision, 8.)

{¶ 26} As noted above, the trial court erred when it considered the contents of the ban letters in dismissing appellant's claim of assault and battery pursuant to Civ.R. 12(C). The same is true of the dismissal of the malicious prosecution claim. The trial court erred when it expressly relied upon the text of the ban letters in finding that appellant knowingly trespassed on the date in question. The material allegations of the complaint are as follows:

> 55. Usher told Plaintiff that if he called police regarding the threat of physical harm on April 18, 2010, that he would tell police that Plaintiff was committing criminal trespass and would have him prosecuted.
>
> 56. Plaintiff did call 911 regarding the threat of physical harm on April 18, 2010.
>
> 57. Usher did tell Franklin County Deputy John Doe that Plaintiff was not allowed on the Property of Grace, that he was committing criminal trespass.
>
> 58. Usher made these statements despite having knowledge that Plaintiff was invited and Usher stating to Plaintiff that he was allowed to attend.
>
> * * *
>
> 98. Plaintiff told prosecutor that he had called 911 at the church because he was threatened by a member of Grace.
>
> 99. Plaintiff told prosecutor that he had a recording of the incident that was confiscated by the Franklin County Sheriff's department.

100.   Plaintiff told prosecutor that he had permission to attend church.

101.  Prosecutor continued the prosecution of Plaintiff despite her knowledge of these facts in the Prior Litigation.

102.  Pastor, Usher, Asst. Pastor, John Doe and Board, jointly and severally, encouraged Prosecutor to continue prosecution of Plaintiff.

103.  Prosecutor and Pastor, Usher, Asst. Pastor, John Doe and/or Board had discussions with Prosecutor and they conspired to continue the prosecution against Plaintiff.

104.  Prosecutor, shortly before trial, for unknown reasons, dismissed the charges against Plaintiff.

105.  Prosecutor had a lack of bases or probable cause to continue the prosecution of Plaintiff.

(Complaint, ¶ 55-58, 98-105.)

{¶ 27} "Probable cause" is a " 'reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.' " *Melanowski* at paragraph one of the syllabus, quoting *Ash v. Marlow*, 20 Ohio 119 (1851).   Where plaintiff establishes lack of probable cause, "the legal inference may be drawn that the proceedings were actuated by malice." *Id.*  The conduct should be weighed in view of his situation and of the facts and circumstances which he knew or was reasonably chargeable with knowing at the time he made the criminal complaint. *Id.*

{¶ 28} The relevant allegations of the complaint, when viewed in appellant's favor, support the inference of the want of probable cause.  Indeed, the complaint alleges that on April 18, 2010, appellant was forcibly removed from the church at the behest of appellees even though appellees had "invited" him to church on that date and knew he "had permission to attend church."  (Complaint, 58, 100.)   If accepted as true, appellant's allegations gives rise to a cognizable claim of malicious prosecution.

{¶ 29} And, where the want of probable cause is shown on the face of the complaint, the existence of malice may be inferred. *Melanowski.  See also, Gates v.*

*Kroger,* 10th Dist. No. 90AP-837 (April 30, 1991). In *Criss v. Springfield Twp.*, 56 Ohio St.3d 82 (1990), the Supreme Court of Ohio stated:

> The requirement of malice turns directly on the defendant's state of mind. Malice is the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent. For purposes of malicious prosecution it means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice

(Citations omitted.) *Id.* at 84-85.

{¶ 30} Appellant claims that appellees initiated and continued to support the prosecution of a criminal trespass against appellant even though appellees had invited appellant to the church, clearly permits an inference of an evil intent or improper purpose. *See Coleman v. Beachwood*, 8th Dist. No. 92399, 2009-Ohio-5560 (Whether complainant lied in her criminal complaint for telephone harassment and in her trial testimony was a factual issue that precluded judgment on the pleadings in plaintiff's action for malicious prosecution.).

{¶ 31} Appellees argue, in the alternative, that they cannot be subject to liability for malicious prosecution inasmuch as a governmental official filed the criminal complaint against appellant, not appellees. In support of this argument, appellees filed a motion in this court on December 5, 2012, asking us to take judicial notice that the complaint in Franklin County Municipal Court case No. 2010 CRB 008377, was filed by an "Officer complainant."

{¶ 32} Under Ohio law, "a private citizen can be held liable for malicious prosecution even where criminal charges were filed by police authorities." *See, e.g., Wallace v. Noel*, 6th Dist. No. WD-09-032, 2009-Ohio-6984, ¶ 43, citing *Archer v. Cachat*, 165 Ohio St. 286, 287-88 (1956). Under the settled law, even if we were to take judicial notice that an "Officer complainant" filed the charges against appellant, we would still be required to reverse the decision of the trial court as to malicious prosecution. Accordingly, appellees' motion shall be rendered moot.

{¶ 33} Based on the foregoing, appellant's second assignment of error is sustained in part as it relates to the claim of malicious prosecution and the first assignment of error

is sustained in part as to appellant's claim for malicious prosecution and his remaining claim of assault and battery.

{¶ 34} In the remainder of appellant's second assignment of error, he argues that the trial court erred when it dismissed several of his claims both on jurisdictional grounds pursuant to Civ.R. 12(C). We will consider the jurisdictional issue first.

### C. Subject-Matter Jurisdiction

{¶ 35} Appellant argues that the trial court erred when it dismissed his claims of civil rights violations, intentional infliction of emotional distress, and civil conspiracy on the grounds that the conduct of the church is not subject to judicial scrutiny pursuant to the ecclesiastic abstention doctrine, also known as the doctrine of church autonomy. The trial court determined that it lacked jurisdiction of appellant's claims for civil conspiracy and intentional infliction of emotional distress because the claim "presents ecclesiastical questions that are inappropriate for this Court to consider." (July 19, 2012 Decision and Entry, 10-11). One of the stated grounds for dismissal of appellant's civil rights claim was that "the church's disciplinary decision to ban plaintiff from their religious organization is an ecclesiastical question that is inappropriate for this Court to review." (July 19, 2012 Decision and Entry, 10.)

{¶ 36} The First Amendment of the United States Constitution provides that " 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.' " *Ogle v. Church of God*, 153 Fed.Appx. 371, 375 (6th Cir.2005), quoting First Amendment to United States Constitution. The United States Supreme Court has held that in matters involving questions of discipline, or of faith, or ecclesiastical rule, custom, or law, the Free Exercise Clause requires that no civil court interfere with the determinations of the church's highest adjudicatory authority before which the matter has been heard. *Id.*, citing *Watson v. Jones,* 80 U.S. 679 (1871).

{¶ 37} Under Ohio law, a civil court has subject-matter jurisdiction over a case involving a religious organization if the dispute is secular rather than ecclesiastical. *See, e.g.*, *Robinson v. Freedom Faith Missionary Baptist Church,* 2d Dist. No. 20232, 2004-Ohio-2607, ¶ 26; *Bhatti v. Singh*, 148 Ohio App.3d 386, 2002-Ohio-3348 (12th Dist.). *See also Tibbs v. Kendrick*, 93 Ohio App.3d 35, 43 (8th Dist.1994). The jurisdictional query in this case is whether the allegations of civil conspiracy, intentional infliction of

emotional distress, and violations of appellant's civil rights involve secular or ecclesiastical matters. Appellant argues that all of his claims involve secular matters which are governed by neutral principles of common law. As noted above, the trial court is not confined to the allegations of the complaint when determining its subject-matter jurisdiction, and it may consider any pertinent evidentiary materials, and our review of the trial court determination is de novo. *See, e.g.*, *Nemazee*; *Southgate Dev. Corp.*

{¶ 38} With respect to appellant's common law tort claims, the evidence in the record clearly establishes that this dispute is born out of appellant's estrangement from the church, his objections to the pastor, and his perception that church leadership mistreated him and his family. However, it is also evident from the record that appellant's malicious prosecution claim arises from a single incident that occurred in April 18, 2010, and that his claim for civil conspiracy arises from the alleged agreement among several church leaders and members to falsely accuse him of criminal trespass and to physically assault him in February 2011. The crux of his claim for intentional infliction of emotional distress is that the conduct of appellees was extreme and outrageous, and that it caused him serious emotional harm.

{¶ 39} The ban letters establish that on December 17, 2008, Pastor Olesh severely restricted appellant's access to the church for a period of one year due to appellant's "unacceptable and offensive behavior," on December 14, 2008, and for "previous incidents." In December 20, 2009, Pastor Olesh extended the restrictions for another year for the stated reason that appellant did not behave "in a Christian manner" on December 19, 2009. The ecclesiastic abstention doctrine precludes the court from adjudicating the merit of the pastor's decision. The record, however, does not contain any evidence that the ban was extended beyond December 2010.

{¶ 40} A property owner has a privilege to use force to eject a trespasser. *See, e.g.*, *Hartwig v. Robinson,* 3d Dist. No. 15-97-03 (Oct. 9, 1997); 1 Restatement of the Law 2d, Torts, Section 77 (1965). However, given the absence of evidence to support a finding that Pastor Olesh extended the ban into 2011, the court is unable to sustain the trial court's determination. *See Leyland v. Blataric,* 9th Dist. No. CA-741 (Dec. 29, 1977) (the question whether the plaintiff was a trespasser and whether defendant used excessive force is generally questions for the jury).

{¶ 41} Appellant's claims of malicious prosecution and civil conspiracy may also be decided independent of any ecclesiastical matters. The issue whether appellees had probable cause to prosecute appellant for trespassing depends on whether appellant was invited to the church on April 18, 2010, as he claims in the complaint. The merit of appellant's assertion can be determined without reference to the governing documents of the church and without a determination of the merits of the ban.

{¶ 42} Furthermore, to the extent that the incidents of April 18, 2010, and February 2011 form the factual basis of appellant's claims for intentional infliction of emotional distress and civil conspiracy, the present record shows that those claims can be resolved without the need for an examination of purely ecclesiastical issues. For these reasons, we hold that the trial court erred when it determined that it was without jurisdiction of the common law claims of civil conspiracy and intentional infliction of emotional distress.

### D. 42 U.S. 1983

{¶ 43} Appellant alleges that appellees conspired with governmental employees to deny him of his first amendment rights to the free exercise of his religion and freedom of association.[5] In order to establish a Section 1983 claim, appellant must establish two elements: "(1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *George v. State,* 10th Dist. No. 10AP-4, 2010-Ohio-5262, ¶ 29, citing *1946 St. Clair Corp. v. Cleveland,* 49 Ohio St.3d 33, 34 (1990).

{¶ 44} A private party is deemed a state actor if there is a sufficient nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself. *See Clellan v. Wildermuth,* 10th Dist. No. 11AP-452, 2011-Ohio-6390, ¶ 24, citing *Roe v. Franklin Cty.,* 109 Ohio App.3d 772 (1996). A state law tort of malicious prosecution is actionable under section 1983 only " 'if it implicates the

---

[5] Appellant's second assignment of error does not specifically reference this claim but appellant argues that the trial court erred by dismissing it and appellees have responded to the argument. Accordingly, we will consider the dismissal of appellant's civil rights claim in this appeal.

plaintiff's federal statutory or constitutional rights.' " *See Bruker v. City of New York,* 92 F.Supp.2d 257, 268 (S.D.N.Y., 2000), quoting *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir.1995). In paragraph 15 of his complaint, appellant alleges that "Pastor, Usher, Asst. Pastor and Board have taken steps to exclude Plaintiff from the church and church membership in violation of the official documents of the Church that govern church affairs." In paragraphs 85-88 of the complaint, appellant alleges:

> 85. Grace, Pastor, John Doe and Board denied Plaintiff the right to question the Pastor's actions that were in contradiction to the governing document of Grace.
>
> 86. Grace, Pastor, John Doe and Board actions were intentionally taken against the Plaintiff violated the governing document of Grace.
>
> 87. Grace, Pastor, John Doe and Board refused to allow an outside Pastor to review the actions of Grace, Pastor, John Doe and Board as an independent arbitrator and said refusal by Grace, Pastor and Board violate the governing document of Grace.
>
> 88. Pastor and Grace, by way of Pastor's actions, made remarks against Plaintiff during church services causing extreme embarrassment to Plaintiff.

{¶ 45} In order for appellant to state a free claim, he must allege that appellees conspired with the sheriff and prosecutor to substantially burden the practice of his religion by preventing him from engaging in a sincerely held religious belief without any reasonable justification related to a legitimate public interest. *See Shakur v. Schriro,* 514 F.3d 878, 884-85 (9th Cir.2008). Here, appellant alleges that the criminal prosecution "denied [him] free exercise of religion" and "denied [him] free exercise of his right to peacefully assemble." (Complaint, ¶ 123, 124.) He does not, however, allege that appellees' prosecution of the criminal trespass charge has prevented him from practicing his faith in another church or prevented him from peacefully assembling with willing church members outside of church property.

{¶ 46} There is no contention that law governing criminal trespass is facially biased. However, the Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination. *See Church of the Lukumi Babalu Aye, Inc. v. Hialeah,* 508

U.S. 520, 534 (1993). The clause " 'forbids subtle departures from neutrality,' " *Id.,* quoting *Gillette v. United States,* 401 U.S. 437, 452 (1971), and "covert suppression of particular religious beliefs." *Id.,* quoting *Bowen v. Roy,* 476 U.S. 693, 703 (1986). Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. *Id., citing Walz v. Tax Comm. of City of New York,* 397 U.S. 664, 696 (1970) (Harlan, J., concurring).

{¶ 47} On the other hand, federal courts have also recognized that a church is entitled to stop associating with someone who abandons it. *Paul v. Watchtower Bible and Tract Soc. of New York, Inc.,* 819 F.2d 875, 883 (9th Cir.1987). Similarly, a church may warn that it will stop associating with members who do not act in accordance with church doctrine. *Headley v. Church of Scientology Internatl.*, 687 F.3d 1173, 1180 (9th Cir.2012).

{¶ 48} Thus, the inquiry is whether appellees alleged conspiracy with the sheriff and prosecutor to initiate and continue an unwarranted criminal prosecution against appellant was motivated by appellees' hostility to appellant's free exercise rights. Thus, the court must determine whether appellant has the right to worship at Grace and to associate with other Grace members at church functions. In so doing, the trier of fact must also determine whether appellees have the right to exclude appellant from the church and its functions. We do not believe that the trier of fact can make the necessary determination without re-examining the merits of appellees' decision to ban appellant from the church. Such an examination certainly requires an interpretation of the church's governing documents as they relate to church disciplinary issues. When viewed in this light, it becomes evident that a ruling upon the merits of appellant's civil rights claim will result in a prohibited judicial review of a church disciplinary decision.

{¶ 49} In short, even if we were to find that appellees were acting under color of state law, we hold that the trial court is without jurisdiction over appellant's civil rights claim. Accordingly, the trial court did not err when it dismissed the civil rights claim due to the lack of subject-matter jurisdiction.

### E. Judgment on the Pleadings

{¶ 50} Appellant's second assignment of error also contends that the trial court erred by dismissing his claims for intentional infliction of emotional distress, civil conspiracy and respondeat superior.[6]

### F. Emotional Distress

{¶ 51} A claim for intentional infliction of emotional distress requires proof of all of the following elements: (1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Clellan* at ¶ 41, citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359 (8th Dist.1990).

{¶ 52} The trial court held that appellant's complaint failed to state a claim for intentional infliction of emotional distress because the tortuous conduct alleged in the complaint was either ecclesiastical in nature or it was not extreme and outrageous. With respect to the requirement that the conduct alleged be "extreme and outrageous," the Supreme Court of Ohio has cited Restatement of the Law 2d, Torts, Section 46d, at 71, 73 (1965), which provides that "[t]he liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Clellan* at ¶ 42, citing *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St.3d 369, 375 (1983) (overruled on other grounds).

{¶ 53} Under Civ.R. 12(C), the first question for this court is whether appellant's complaint alleges facts which, if admitted, would permit an inference of extreme and outrageous conduct. *Treinen v. Village of Greenhills*, S.D. Ohio No. L1805941 (June 29, 2006), citing *Miller v. Currie*, 50 F.3d 373, 377-78 (6th Cir.1995). *See also Rogers v.*

---

[6] Having concluded that the trial court did not err when it held that it lacked subject-matter jurisdiction of appellant's civil rights claim, we need not further address that claim. Appellant's claim of malicious prosecution was addressed earlier in this decision.

*Targot Telemarketing Servs.,* 70 Ohio App.3d 689 (10th Dist.1990). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager* at 375.

{¶ 54} We agree with appellees that appellant's complaint raises a number of ecclesiastic issues in support of the claim for intentional infliction of emotional distress.[7] However, even if we disregard such allegations in the analysis, we still believe that the remaining allegations state a claim for relief. Construing the relevant allegations in appellant's favor, it is reasonable to conclude that a collective decision by appellees to prosecute appellant on false criminal charges in 2010, and to commit assault and battery upon appellant in 2011, is extreme and outrageous conduct. *See Coleman* at ¶ 29 (allegation that defendant had falsely accused plaintiff of telephone harassment and had threatened to publish plaintiff's psychological records in the criminal prosecution precluded a judgment on the pleadings as to intentional infliction of emotional distress). Accordingly, the trial court erred when it granted appellees' motion for judgment on the pleadings as to the claim for intentional infliction of emotional distress.

### G. Civil Conspiracy

{¶ 55} Civil conspiracy is considered an intentional tort. *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 60 (10th Dist.2009); *O'Brien v. Olmsted Falls*, 8th Dist. No. 89966, 2008-Ohio-2658. It consists of " ' "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." ' " *Id.*, quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987). Civil conspiracy is derivative in that the claim cannot be maintained absent an underlying tort that is actionable without the conspiracy. *Id.*

{¶ 56} Appellant alleges the following: that appellees "had regular meetings to discuss Plaintiff and to make plans to deal with Plaintiff" (Complaint, ¶ 22); that "Pastor, Usher, Asst. Pastor, Board, Sergey, Chmil, [and] Grace * * * expressed anger, malice and sinister intent toward Plaintiff at these meetings and to the church body" (Complaint,

---

[7] *See* Complaint, ¶ 85-88.

¶ 114); that these same defendants "made plans to continue the prosecution of Plaintiff." (Complaint, ¶ 117.)

{¶ 57} Appellant further alleges that "[d]efendants acted in a civil conspiracy * * * to intentionally inflict emotional distress upon Plaintiff" (Complaint, 122); and that "Grace, Pastor, * * * and Board determined a course of action against Plaintiff's interest." (Complaint, ¶ 79.)

{¶ 58} The portions of the complaint quoted above, combined with the allegations relevant to each of the individual claims for relief, permit the inference of a civil conspiracy. Indeed, an agreement among appellees to maliciously prosecute appellant for a criminal trespass in 2010, commit an assault and battery upon appellant in February 2011, and to inflict serious emotional distress upon appellant, arguably states a claim for civil conspiracy. Accordingly, we hold that the trial court erred when it dismissed appellant's claim of a civil conspiracy pursuant to Civ.R. 12(C).

{¶ 59} For the foregoing reasons, appellant's second assignment of error is sustained as to the claims for relief sounding in malicious prosecution, intentional infliction of emotional distress, and civil conspiracy.[8]

## H. Respondeat Superior

{¶ 60} Under the doctrine of respondeat superior, an employer is vicariously liable for the torts that employees commit within the scope of their employment. *Osborne v. Lyles*, 63 Ohio St.3d 326, 329 (1992); Restatement of the Law 2d, Agency, Section 219(1), at 481 (1958). An employee's intentional torts are within the scope of employment if they are calculated to facilitate or promote the business for which the employee was hired. *Byrd v. Faber*, 57 Ohio St.3d 56, 59 (1991), citing *Little Miami Ry. Co. v. Wetmore*, 19

---

[8] The applicable statute of limitations for a civil conspiracy is the statute applicable to the underlying cause of action. *Cully v. St. Augustine Manor,* 8th Dist. No. 67601 (Apr. 20, 1995); *Davis v. Clark Cty. Bd. of Commrs.*, 2d Dist. No. 2011-CA-84, 2013-Ohio-2758, ¶ 19. "It is also well settled that assault and battery cannot be transformed into [an intentional-infliction-of-emotional-distress] subject to a longer statute of limitations, as such would circumvent the statute of limitations for assault and battery." *Stafford v. Columbus Bonding Ctr,* 177 Ohio App.3d 799 ¶ 16 (10th Dist.2008), citing *Doe v. First United Methodist Church,* 68 Ohio St.3d 531, 536 (1994). Thus, upon remand, an assault and battery that occurred more than one year before the filing of the complaint supports neither the claim of civil conspiracy or of intentional infliction of emotional distress.

Ohio St. 110, 132 (1869); *Wynn v. Ohio Dept. of Job & Family Servs.,* 10th Dist. No. 04AP-163, 2005-Ohio-460, ¶ 6, citing *Browning v. Ohio State Hwy. Patrol,* 151 Ohio App.3d 798, 2003-Ohio-1108, ¶ 60 (10th Dist.). "[I]f the employee tortfeasor acts intentionally and willfully for his own personal purposes, the employer is not responsible, even if the acts are committed while the employee is on duty." *Browning* at ¶ 60. *See also Groob v. Keybank,* 108 Ohio St.3d 348, 358, 2006-Ohio-1189, ¶ 58 ("an employer is not liable under a theory of respondeat superior unless its employee is acting within the scope of her employment when committing a tort-merely being aided by her employment status is not enough").

{¶ 61} In *Byrd,* the Supreme Court of Ohio found that a cleric's nonconsensual sexual conduct with a parishioner's spouse was an independent self-serving act that did not facilitate or promote characteristic church activity, and that the church was not subject to liability under the doctrine of respondeat superior. *Id.* at 59-60. The Supreme Court concluded that intentional acts of the employee must be characteristic of the church's activities or reasonably foreseeable. *Id. See also Mirick v. McClellan,* 1st Dist. No. C-930099 (Apr. 27, 1994). Similarly, in *DiPietro v. Lighthouse Ministries,* 159 Ohio App.3d 766, 2005-Ohio-639 (10th Dist.), we concluded that the church was not subject to respondeat superior liability for a pastor's consensual extramarital sexual affair with parishioner inasmuch as pastor's conduct was planned in advance, it did not occur on or near church premises, it did not arise out of the pastor's official counseling duties.

{¶ 62} However, in *Johnson v. Church of the Open Door*, 179 Ohio App.3d 532, 2008-Ohio-6054 (9th Dist.), the court held that the genuine issue of material fact precluded summary judgment for the church where church's pastor encouraged investors to put money into an unregistered securities program run by church's director of activities and outreach. The court found that the pastor was arguably acting to increase church membership by promoting investment in a program run by another church employee. *Id.*

{¶ 63} Here, the trial court did not reach the merits of appellant's theory of vicarious liability inasmuch as it dismissed all of appellant's claims for relief against each of the individual church employees. Given the fact that we have found that the complaint states a claim for relief in malicious prosecution, assault and battery, and intentional

infliction of emotional distress, we must now determine whether the church is subject to vicarious liability under the theory of respondeat superior.

{¶ 64} Given the allegation of a conspiracy among several church employees, including Pastor Olesh, Assistant Pastor Aleksander Shishlo, and the church board, to commit tortuous acts upon appellant, it is permissible to infer that the intentional conduct was either characteristic of the church's activities or reasonably foreseeable. Whether appellant can prove his allegations is not for this court to determine in the review of a ruling under Civ.R. 12(C). Indeed, "the issue of intentional conduct being within the employee's scope of employment is ordinarily a fact-dependent determination." *Osborne* at 330.

## V. CONCLUSION

{¶ 65} Having determined that the trial court erred by dismissing appellant's claims of intentional infliction of emotional distress, malicious prosecution and civil conspiracy on jurisdictional grounds, and having further determined that the trial court erred by granting appellees' motion for judgment on the pleadings as to the timely filed claim for assault and battery, the claim of malicious prosecution, the claim for intentional infliction of emotional distress, and the claim for civil conspiracy, we sustain in part appellant's first and second assignments of error and overrule appellant's third assignment of error.

{¶ 66} The judgment of the Franklin County Court of Common Pleas is reversed and the cause is hereby remanded for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded.*

KLATT, P.J., and DORRIAN, J., concur.

_____