[Cite as *Chang v. Time Warner Cable*, 2019-Ohio-3465.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ching Chang, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-101 |
| v. | : | (C.P.C. No. 17CV-5118) |
| Time Warner Cable et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 27, 2019

**On brief:** *Ching Chang*, pro se. **Argued:** *Ching Chang.*

**On brief:** *E. Ray Critchett, LLC*, and *E. Ray Critchett*, for appellees. **Argued:** *E. Ray Critchett.*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Ching Chang, plaintiff-appellant, appeals from the judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for judgment on the pleadings filed by Time Warner Cable ("TWC") and Stat Communications Company ("Stat"), defendants-appellees.

{¶ 2} As alleged in appellant's complaint, TWC was to place 152 feet of cable/conduit underground in the rear of properties from 114 to 120 Spring Creek Drive. Appellant owns a property near this location at 125 Gibson Place. The city of Westerville ("city") issued a permit to TWC for the "125 Spring Creek Drive" project. TWC hired Stat to perform the directional drilling on October 25, 2015.

{¶ 3}    The complaint alleged that an overnight rain occurred on October 27, 2015, and on the morning of October 28, 2015, the tenant renting appellant's property reported the basement was flooded with sewage. Appellant contacted the city and a private plumbing company, Waterworks Company ("Waterworks"), to investigate the source of the problem.

{¶ 4}    Waterworks performed an inspection and discovered the sewage pipe for 125 Gibson Place was blocked at the northwest corner of the rear yard of 99 Gibson Place. The city reported similar findings to appellant the next day, finding there was a blocked private sanitary sewer lateral along the property line of a neighboring property, 99 Gibson Place.

{¶ 5}    On October 30, 2015, Waterworks undertook the repair of the sewer. Waterworks discovered broken clay pipe, electrical steel conduit crossing the open area, a broken clay riser, and loose soil.  Appellant alleged in his complaint that Stat had broken the sewer pipe while burying the cable and blocked the sewer line.

{¶ 6}    Appellant hired a private company to dry and clean his basement. Appellant alleged in his complaint that he sent demand letters to TWC and Stat but received no responses.

{¶ 7}    On June 8, 2017, appellant filed the present action against TWC, Stat, and the city.  In Count 1, appellant alleged appellees undertook their excavation in the wrong location and in violation of the permit, claiming the excavation was to occur at the rear of 114-120 Spring Creek Drive but actually took place at the rear of 99 Gibson Place. In Count 2, appellant alleged appellees conducted the excavation without proper approval. In Count 3, appellant alleged Stat failed to maintain reasonable clearance between any underground facility and the cutting edge or point of powered equipment, in violation of R.C. 3781.30(A)(1). In Count 4, appellant alleged Stat failed to visually monitor excavation activity for any indication of the underground utility facility, and to conduct the excavation within the tolerance zone of the underground utility facilities in order to prevent damage, in violation of R.C. 3781.30(A)(3) and (4). In Count 5, appellant alleged Stat failed to report the type and location of any damage to an underground utility as soon as discovered and make necessary repairs, in violation of R.C. 3781.30(A)(6), and failed to comply with the damage-reporting requirements in the city's permit. In Count 6,

appellant alleged appellees violated the terms of the city's permit by failing to restore all surfaces to the original or better condition. In Count 7, appellant alleged a claim for negligence, asserting appellees failed to respond regarding the damage and contamination they caused by violating the permit. He sought damages for repairs, clean-up costs, and punitive damages.

{¶ 8} On August 7, 2017, the city moved for judgment on the pleadings, which the court granted on June 21, 2018.

{¶ 9} On June 27, 2018, TWC and Stat filed a motion for leave to file motion to dismiss instanter. The trial court granted the motion and, on July 17, 2018, TWC and Stat filed a joint motion for judgment on the pleadings pursuant to Civ.R. 12(C). On February 7, 2019, the trial court granted TWC's and Stat's motion for judgment on the pleadings. With regard to Counts 1, 2, 6, and 7, the court found appellant lacked privity to the contract between TWC and the city and was not an intended third-party beneficiary under the contract; thus, he could not recover under it. With regard to Counts 3, 4, and 5, the court found these allegations did not contain any specificity as to how Stat violated the requirements under R.C. 3781.30; R.C. 3781.30 only refers to the duties of excavators; R.C. 3781.30 does not set forth a private right of action; R.C. 3781.30 does not impose the duty of locating lines on the excavator, Stat; excavators are responsible for notifying the Ohio Utilities Protection Service ("OUPS") before the excavation of the location of the dig; once the excavator notifies OUPS of the location, it fulfills its duty to inform itself of the location; and the complaint does not indicate whether the lines were marked prior to the excavation, but exhibits attached to the complaint show flags marking the utility areas. With regard to the claims for negligence in Count 7, the trial court found the complaint failed to establish appellees owed appellant a duty. Appellant appeals the judgment of the trial court.

{¶ 10} However, appellant's brief is deficient. Appellant elected to proceed pro se both in bringing this action and on appeal. "It is well-established that *pro-se* litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel." (Emphasis sic.) *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654 (10th Dist.2001). "In civil cases, the same rules, procedures and standards apply to one who appears pro se as apply

to those litigants who are represented by counsel." *Fields v. Stange*, 10th Dist. No. 03AP-48, 2004-Ohio-1134, ¶ 7, citing *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, ¶ 10.

{¶ 11} In the present case, appellant's brief contains no assignments of error. Pursuant to App.R. 16(A)(3), an appellant's brief must contain "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." Assignments of error are particularly important because appellate courts determine each appeal "on its merits on the assignments of error set forth in the briefs under App.R. 16." App.R. 12(A)(1)(b). "This court rules on assignments of error, not mere arguments." *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, quoting App.R. 12(A)(1)(b); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding appellate courts "rule[] on assignments of error only, and will not address mere arguments"). It is not the duty of an appellate court to create an argument on an appellant's behalf. *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359, ¶ 22. Consequently, without assignments of error, an appellate court has nothing to review. *Luke v. Roubanes*, 10th Dist. No. 16AP-766, 2018-Ohio-1065, ¶ 16.

{¶ 12} Because appellant has failed to set forth any assignments of error for this court's review, it is not necessary for this court to address appellant's arguments in order to affirm the trial court's judgment. *State v. Botts*, 10th Dist. No. 12AP-822, 2013-Ohio-4051, ¶ 9. Appellate courts have discretion to dismiss appeals that fail to set forth assignments of error. *CitiMortgage, Inc. v. Asamoah*, 10th Dist. No. 12AP-212, 2012-Ohio-4422, ¶ 5; *Tonti v. Tonti*, 10th Dist. No. 06AP-732, 2007-Ohio-2658, ¶ 2. Many times, however, appellate courts instead review the appealed judgment in the interest of serving justice. *Asamoah* at ¶ 6; *Tonti* at ¶ 2. Here, although we could dismiss appellant's appeal for failure to follow the appellate rules, we will briefly address the main points in appellant's brief.

{¶ 13} Civ.R. 12(C) states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings, pursuant to Civ.R. 12(C), "has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted." *Tran v. State*, 10th Dist. No. 09AP-587, 2009-Ohio-6784, ¶ 10. In ruling on a motion for

judgment on the pleadings, a trial court is permitted to "consider both the complaint and answer." *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 8. The trial court "must construe all the material allegations of the complaint as true, and must draw all reasonable inferences in favor of the nonmoving party." *Id.* The court may grant the motion "if it finds, beyond doubt, that the plaintiff can prove no set of facts in support of the claim(s) that would entitle him or her to relief." *Id.*

{¶ 14} A motion for judgment on the pleadings under Civ.R. 12(C) "tests the allegations of the complaint and presents a question of law." *Id.* at ¶ 9. As such, an appellate court's "review of a decision to grant judgment on the pleadings is de novo." *Id.*

{¶ 15} In the present case, appellant's arguments concern three subjects: (1) the application of R.C. 3781.30(A)(1), (3), (4), and (6), (2) the violation of the city permit, and (3) negligence. With regard to R.C. 3781.30, that section provides, in pertinent part:

> (A) When making excavations using traditional or trenchless technologies, the excavator shall do all of the following:
>
> (1) Maintain reasonable clearance between any underground facility and the cutting edge or point of powered equipment;
>
> * * *
>
> (3) When approaching and excavating within the tolerance zone of underground utility facilities with powered equipment, require an individual other than the equipment operator, to visually monitor the excavation activity for any indication of the underground utility facility;
>
> (4) Conduct the excavation within the tolerance zone of underground utility facilities in a careful, prudent, and nondestructive manner, when necessary, in order to prevent damage;
>
> * * *
>
> (6) As soon as any damage is discovered, including gouges, dents, or breaks to coatings, cable sheathes, and cathodic protection anodes or wiring, report the type and location of the damage to the utility and permit the utility a reasonable amount of time to make necessary repairs[.]

{¶ 16} We agree with the trial court's conclusions that appellant's complaint merely recites the statutory language and fails to allege with any specificity how Stat violated the statute, and that, regardless, R.C. 3781.30 does not set forth a private right of action for violations thereof. Furthermore, we agree that R.C. 3781.30 does not impose the duty of locating lines on the excavator. Instead, the statute "simply establishes a standard of care for excavation in private projects, *after* the excavator has been supplied with reasonably accurate information as to the approximate location of the lines." (Emphasis sic.) *E. Ohio Gas Co. v. Kenmore Constr. Co., Inc.*, 9th Dist. No. 19567 (Mar. 28, 2001). Once a contractor notifies OUPS, it fulfills its duty to inform itself of the location of the underground utility facilities, pursuant to R.C. 3781.28(A) and *Ohio Edison Co. v. Wartko Constr.*, 103 Ohio App.3d 177, 180 (11th Dist.1995). Here, the complaint fails to address whether the utility lines were marked and marked accurately and does not contend that Stat failed to contact OUPS. For these reasons, we affirm the trial court's judgment with regard to its findings related to R.C. 3781.30.

{¶ 17} With regard to the city permit, we agree with the trial court that appellant's complaint fails to state a claim upon which relief may be granted. "Privity of contract" is " '[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so.' " *State v. Harding*, 10th Dist. No. 13AP-362, 2014-Ohio-1187, ¶ 28, quoting *Black's Law Dictionary* (9th Ed.2009). "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161 (1991). Here, the permit was a contract between the city and TWC, appellant was not a party to or privy to the contract, and appellant was not an intended third-party beneficiary. Appellant had no part in the making of the contract, and appellant's property was not a part of the contract. Therefore, appellant cannot recover under this theory.

{¶ 18} With regard to appellant's negligence claim, a cause of action for negligence requires proof of: (1) a duty, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). Here, appellant's complaint failed to demonstrate several of the key elements of a viable negligence claim. As discussed above, appellees did not owe appellant a duty, as appellant was not privy to the contract between the city and TWC. Furthermore,

appellant has failed to demonstrate appellees caused any of the damages alleged. Appellant merely speculates that because appellees were working in the general area of the broken and blocked pipe, they were responsible for breaking it. Appellant has failed to allege any facts in his complaint that connect appellees' activities to the damages he claims. Therefore, appellant has failed to present a claim for negligence upon which relief may be granted. For all the foregoing reasons, we find no error with the trial court's findings, and agree that, beyond doubt, appellant can prove no set of facts in support of his claims that would entitle him to relief.

{¶ 19} Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____