Letitia Pauline WHITE, Personal Representative of the Estate of Earsel Larry Johnson, Appellee,

v.

Dr. Kenneth KELSEY, Appellant.

No. 90–1997.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1991.

Decided June 11, 1991.

As Amended June 21, 1991.

Bruce Farmer, Jefferson City, Mo., for appellant.

Charles W. Gordon, Jr., Kansas City, Mo., for appellee.

Before LAY, Chief Judge, and MAGILL and LOKEN, Circuit Judges.

LAY, Chief Judge.

In 1984, Earsel Larry Johnson, a Missouri state prisoner, broke his ankle after being thrown down some stairs by a group of inmates. On March 6, 1984, Johnson

filed a pro se complaint in the federal district court against William Armontrout, the prison warden, alleging deliberate indifference to his medical needs and inadequate medical care, pursuant to 42 U.S.C. § 1983 (1988). On May 3, he amended the complaint to add Dr. Kenneth Kelsey, Dr. Richard K. Bowers, and two other doctors as defendants. Kelsey was the Chief Medical Officer at the penitentiary at the time Johnson broke his ankle, and he treated Johnson until March 5, 1984. Bowers replaced Kelsey as the Chief Medical Officer at the penitentiary and began treating Johnson in April, 1984. Bowers and Kelsey were never employed by the penitentiary simultaneously. After counsel was appointed for Johnson in 1986, a third amended complaint added another defendant. The warden, Bowers, and another defendant answered the complaint. Kelsey and the other two doctors were named defendants but were never served. A trial was held in March 1987, and the jury found in favor of those defendants who answered the complaint.

On April 10, 1987, Kelsey was served with Johnson's third amended complaint. Kelsey's motion for summary judgment based on res judicata was denied and a second trial was held in December 1989. The jury awarded Johnson $30,000 in actual damages. The court upheld the verdict and awarded Johnson $23,930.45 in attorney's fees and expenses. This appeal followed. We affirm the judgment on the verdict, but remand for reconsideration the award for attorney's fees.

## I. Res Judicata·

■ Kelsey argues that Johnson's claim is barred by res judicata. Res judicata, or claim preclusion, applies if (1) the prior judgment was rendered by a court of competent jurisdiction, (2) the prior judgment was a final judgment on the merits, and (3) the same cause of action and the same parties or their privies were involved in both cases. *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir.1989). The first two requirements are satisfied, but the third element is disputed. Kelsey argues that the claim against him arose out of the same incident or series of transactions as the claim against Bowers. He claims he was in privity with Bowers because they were both prison employees providing medical treatment to Johnson for a specific injury.

The magistrate[1] denied Kelsey's motion for judgment notwithstanding the verdict finding that res judicata did not apply. We agree. Although Kelsey and Bowers were both state employees, neither were sued in their official capacity for acts committed by the state. *See Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir.1983);[2] *Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir.1987).[3] Kelsey was sued personally for his individual treatment of Johnson. Johnson produced evidence that Kelsey set his broken ankle without anesthetic and that no x-ray was taken afterward to determine proper alignment. J.App. at 34. None of the other defendants were accused of having participated with Kelsey in this alleged misconduct. "Privity does not exist merely because parties happen to be interested in

1. The case was tried by consent of the parties before Magistrate William A. Knox, in the Western District of Missouri.

2. Kelsey relies on *Micklus* to support his argument that when a newly named defendant is "sufficiently identified with the previous defendants ... res judicata [may] apply." *Micklus*, 705 F.2d at 317. This overlooks the fact that in *Micklus* the defendants were sued only in their official capacities and it was expressly alleged that the acts were committed by the state itself rather than by the employees as individuals. *Id.* Here, Kelsey is sued solely for his own misconduct in which the other defendants did not

participate. In fact, Bowers was not even employed at the time Kelsey treated Johnson.

3. In *Headley*, a police officer sued individual police officers under section 1983 alleging due process and equal protection violations, after having recovered lost earnings and attorney's fees in a prior action against the city for discrimination and wrongful discharge. *Headley*, 828 F.2d at 1274. The court held that res judicata did not bar the second action, although the cause of action was identical in both cases. The individual officers were not in privity with the city because they were sued in their individual capacities. *Id.* at 1279–80.

the same question, or in proving or disproving the same state of facts." *Headley*, 828 F.2d at 1277 n. 4. The doctors's actions were separate in time and function. Kelsey was the doctor during the traumatic care phase and Bowers was the doctor in the post-traumatic phase of Johnson's injury. Prison policy did not dictate Kelsey's or Bowers's actions. A claim is not terminated against one person who may be liable for a loss by a judgment against another person liable for the loss. Restatement (Second) of Judgments § 49 comment a (1982) provides:

> When the claimant thus brings consecutive actions against different persons liable for the same harm, the rendition of the judgment in the first action does not terminate the claims against other persons who may be liable for the loss in question. The judgment itself has the effect of officially confirming the defendant's obligation to make redress, an obligation which under the substantive law co-exists with that of the other obligor. No reason suggests itself why the legal confirmation of one obligation should limit or extinguish the other.

Joinder of potentially liable defendants is permissive. Fed.R.Civ.P. 20. We find that Kelsey was not in privity with Bowers and that the doctrine of res judicata does not bar this action.[4]

## II. Attorney's Fees

■ Kelsey argues that the award of attorney's fees should be reduced to reflect 1987 hourly rates instead of 1990 rates. He argues that Johnson deliberately chose not to include Kelsey in the first trial and that hours were duplicated as a result. According to Kelsey, Johnson unreasonably prolonged the litigation and offered no reason or excuse for not finding and serving Kelsey prior to the first trial.

We find the district court did not abuse its discretion in determining a reasonable rate using market rates. *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir. 1988). The hourly rate was reasonable when compared to the ordinary fee for similar work in the community. Although it appears the magistrate reduced the award for hours duplicated in the second trial, the record is unclear. Obviously, no compensation should be granted for time spent pursuing unsuccessful claims that are distinct from prevailing claims. *Catlett v. Missouri Highway & Transp. Comm'n*, 828 F.2d 1260, 1270 (8th Cir. 1987), *cert. denied*, 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988).

The problem here is that the record does not indicate whether attorney time spent in the unsuccessful trial against Bowers was allocated to Kelsey's trial. The magistrate simply stated that "plaintiff's counsel has assured the court in conference and in his reply to defendants' [sic] objections that any fees generated in preparation for the first trial have been redacted from the fees now sought. The court is persuaded that this is the case...." J.App. at 37–38.

We feel Johnson's counsel should submit to the magistrate a specific time record indicating only the time allocated to Kelsey's case. The magistrate should make specific findings based on the time documentation. The record here suggests that the magistrate simply accepted the attorney's oral statement of that fact.[5] We do not doubt the veracity of Johnson's counsel but counsel has a duty to produce specific documentation related to Kelsey's case that does not overlap with the first prosecution unless the time can be allocated specifically to Kelsey's trial.

---

4. Kelsey also may not use the doctrine of collateral estoppel, or issue preclusion, as a defense to the judgment in the second action because the issue of Kelsey's deliberate indifference was not litigated in the first trial. *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990).

5. The magistrate should also carefully check for inconsistencies. For example, Johnson's brief and affidavits in support of the motion for attorney's fees states that attorney Daniel R. Young's hourly rate is $90. The calculation for the award distribution, however, reflects Young's rate at $95 an hour. J.App. at 59, 65, 111, 113, 114.

We therefore remand for reconsideration of the attorney's fees award. The judgment otherwise is affirmed.