[Cite as *State v. Harding*, 2014-Ohio-1187.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,
Ohio Housing Finance Agency,        :

        :             **No. 13AP-362**

          **Plaintiff-Appellee,**               (C.P.C. No. 11CVH-07-8954)

        :                 **and**

v.                                     **No. 13AP-459**

        :            (C.P.C. No. 13-JG-21487)

Neal Harding et al.,

        :            **(REGULAR CALENDAR)**

          **Defendants-Appellants.**

        :

---

### D E C I S I O N

Rendered on March 25, 2014

---

*Michael DeWine*, Attorney General; *Michael H. Igoe & Associates, LLC*, *Michael H. Igoe* and *Daniel J. Igoe*, for appellee.

*Moore & Yaklevich*, and *John A. Yaklevich*, for appellants.

---

APPEALS from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendants-appellants, Neal Harding and Heritage Construction Company, Inc. ("Heritage"), appeal two judgments rendered by the Franklin County Court of Common Pleas in favor of plaintiff-appellee, the Ohio Housing Finance Agency ("OHFA"). For the following reasons, we affirm both judgments.

{¶ 2} OHFA is a state agency that extends secured financing to qualified borrowers so that the borrowers may acquire, construct, and/or rehabilitate low and moderate income housing projects in Ohio. In 2002, Waterford Townhomes Limited Partnership ("Waterford") was constructing a 92-unit multi-family housing project in

Lima, Ohio. To facilitate that construction, Waterford sought a direct loan in the amount of $1,500,000 from OHFA. OHFA agreed to extend the loan.

{¶ 3} The parties executed a Direct Loan Agreement on September 18, 2002. On that same day, Waterford also executed a Cognovit Promissory Note in the amount of $1,500,000. According to Section 1.1 of the Direct Loan Agreement, Waterford agreed to repay the $1,500,000 in principal, "together with interest accruing on the outstanding balance thereof at the rate of two percent (2.0%) per annum, for a term of nine (9) years, in accordance with the terms of the Cognovit Promissory Note between Borrower and Lender evidencing the Loan." The Cognovit Promissory Note provided that Waterford would repay OHFA in nine annual installments of $183,773.16 due on or before September 18 of each year between 2004 and 2012. If Waterford did not pay as required, the terms of the Cognovit Promissory Note authorized an attorney to appear for Waterford in an Ohio court and confess judgment in favor of the holder of the note.

{¶ 4} Waterford secured the loan by submitting to OHFA two separate guaranties. The first guaranty, signed by Harding, stated:

> Guarantor unconditionally guarantees to Lender (i) the prompt and full payment to Lender when due, whether by acceleration or otherwise, of the principal amount of the Loan, together with interest, late charges, collection costs, reasonable attorney fees, all as provided for in the Note in an amount up to, but not to exceed One Million One Hundred Fifteen Thousand Dollars ($1,115,000) * * *. Guarantor hereby promises that, if the Loan is not paid promptly when due * * *, Guarantor shall, upon request of Lender, pay the principal and accrued interest of the Loan to Lender in an amount up to, but not to exceed One Million One Hundred Fifteen Thousand Dollars ($1,115,000).

The second guaranty, signed by Heritage, included identical language, except that it did not monetarily limit Heritage's liability. Both guaranties provided that "[g]uarantor hereby waives all suretyship defenses."

{¶ 5} Waterford never made any loan repayments. On December 17, 2009, OHFA filed a complaint seeking immediate judgment on the Cognovit Promissory Note. That same day, the trial court issued a judgment against Waterford in the amount of $1,823,392.21, plus post-judgment interest of $164.61 per day, costs, and $100 in attorney fees.

{¶ 6}  The December 17, 2009 judgment was a final, appealable order that terminated the case.  Nevertheless, on January 28, 2010, OHFA moved to amend its complaint to add claims against Harding and Heritage for their failure to comply with their guaranties.  The trial court granted that motion.

{¶ 7}  After answering the amended complaint, Harding moved for dismissal of the complaint.  Harding argued that the trial court lost subject-matter jurisdiction once it issued the December 17, 2009 judgment.  Thus, Harding contended the trial court lacked the authority to allow OHFA to amend the complaint and continue to litigate the action.  Heritage, like Harding, answered the complaint and filed a similar motion.

{¶ 8}  In a judgment dated May 9, 2011, the trial court recognized its mistake in allowing amendment of the complaint after it had entered final judgment as to all claims and parties.  It thus dismissed without prejudice all the claims that OHFA had pleaded in the amended complaint for lack of subject-matter jurisdiction.

{¶ 9}  On July 20, 2011, OHFA filed a new complaint against Harding and Heritage that alleged that both defendants breached their guaranties by refusing to pay the amount due on the loan after Waterford defaulted.  Both defendants answered and moved for summary judgment.  In their motions for summary judgment, defendants argued that:  (1) the trial court resolved the question of subject-matter jurisdiction in the May 9, 2011 judgment, and thus, the doctrine of issue preclusion required the trial court to apply that ruling in the subsequent litigation and dismiss the July 20, 2011 complaint for lack of subject-matter jurisdiction; and (2) OHFA could have raised its claims against defendants in the litigation commenced with the December 17, 2009 complaint against Waterford, and thus, the doctrine of claim preclusion barred OHFA from raising those claims in its July 20, 2011 complaint.  The trial court rejected these arguments and denied defendants' motions.

{¶ 10} OHFA then moved for summary judgment.  The trial court granted that motion.  On April 2, 2013, the trial court entered judgment against Harding in the amount of $1,115,000, plus prejudgment interest of $388,325.48, and against Heritage in the amount of $1,500,000, plus prejudgment interest of $522,410.96.

{¶ 11} On April 19, 2013, Harding filed a motion before the trial court seeking a stay of execution of judgment pursuant to Civ.R. 62(B).  The motion also asked the trial

court to approve the posting of an unusual form of security in place of the normal supersedeas bond. Harding requested the trial court to allow him to post a supersedeas bond executed by him and secured by an irrevocable letter of credit issued by JPMorgan Chase ("Chase"). The trial court denied this motion.

{¶ 12} Defendants filed a notice of appeal on April 29, 2013. Soon thereafter, defendants moved this court to stay the execution of the April 2, 2013 judgment. While that motion was pending, the trial court issued to Chase a garnishment order. The order required Chase to state the amount of funds that it held in Harding's name and to pay those funds to the Franklin County Clerk of Courts if the amount was less than the amount listed on the order ($1,503,325.48).

{¶ 13} On May 15, 2013, this court stayed the execution of the April 2, 2013 judgment on condition that Harding post a supersedeas bond of $1,616,075. Harding immediately deposited the specified amount with the clerk. The next day, Harding moved the trial court to vacate the garnishment order. During the pendency of that motion, Chase responded to the garnishment order. In its response, Chase stated that Harding held an account with it and provided the account total, but it did not submit any of the funds in that account to the clerk. To this date, Chase has not deposited with the clerk any of the funds in Harding's account.

{¶ 14} In a judgment dated May 28, 2013, the trial court denied Harding's motion to vacate the garnishment order. Harding appealed that judgment to this court, where we consolidated the appeal with the appeal from the April 2, 2013 judgment.

{¶ 15} Defendants now assign the following errors:

> **Assignment Of Error No. 1**
>
> THE TRIAL COURT ERRED IN OVERRULING APPELLANTS' MOTIONS FOR SUMMARY JUDGMENT AND SUSTAINING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE APPELLANTS ESTABLISHED THAT APPELLEE'S COMPLAINT IS BARRED BY RES JUDICATA.
>
> **Assignment Of Error No. 2**
>
> THE TRIAL COURT ERRED IN SUSTAINING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED, AND APPELLEE

WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF
LAW.

**Assignment Of Error No. 3**

THE TRIAL COURT ERRED IN AWARDING
PREJUDGMENT INTEREST ON APPELLANT HARDING'S
GUARANTY.

**Assignment Of Error No. 4**

THE TRIAL COURT ERRED IN OVERRULING
APPELLANTS' MOTIONS FOR STAY OF EXECUTION AND
TO RELEASE GARNISHMENT.

{¶ 16} By their first assignment of error, defendants argue that the trial court erred in not applying res judicata to preclude OHFA's action against them. In Ohio, the doctrine of res judicata encompasses both issue preclusion, also known as collateral estoppel, and claim preclusion. *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St.3d 449, 2010-Ohio-606, ¶ 21. Defendants assert two arguments, one of which relies on issue preclusion and one of which relies on claim preclusion. We will address the issue preclusion argument first.

{¶ 17} By their issue preclusion argument, defendants assert that the trial court's May 9, 2011 determination that it lacked subject-matter jurisdiction[1] precluded the relitigation of the jurisdictional question in OHFA's second action against defendants. According to defendants, the trial court should have applied its earlier holding to the second action and dismissed it. We disagree.

---

[1] We note that the precedent the trial court relied on to reach this determination holds that a final judgment divests a court of jurisdiction, not subject-matter jurisdiction. *Hikmet v. Turkoglu*, 10th Dist. No. 09AP-1104, 2010-Ohio-4514, ¶ 9. The term "jurisdiction" comprises three meanings, only one of which is subject-matter jurisdiction. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11-12. "Jurisdiction" may also refer to a court's authority to determine a specific case within that class of cases that is within the court's subject-matter jurisdiction. *Id.* at ¶ 12.

In the initial litigation against defendants, the trial court had subject-matter jurisdiction over the action, but lacked the jurisdiction, i.e., authority, to allow amendment of the complaint and oversee subsequent litigation due to the entry of a final judgment. Nevertheless, the trial court concluded that it lacked subject-matter jurisdiction in the May 9, 2011 judgment. That validity of that judgment is not at issue in this appeal. Consequently, we proceed on the premise that the entry of the December 17, 2009 judgment divested the trial court of subject-matter jurisdiction.

{¶ 18} Pursuant to the doctrine of issue preclusion, " 'a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.' " *State ex rel. Davis v. Public Emps. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 27, quoting *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). Essentially, issue preclusion prevents the relitigation of facts and issues that the parties or their privies fully litigated in a previous case. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, ¶ 44.

{¶ 19} A court of common pleas is a court of general jurisdiction and, as such, possesses the authority to initially determine its own jurisdiction over both the person and subject matter in an action before it. *State ex rel. Ruessman v. Flanagan*, 65 Ohio St.3d 464, 466 (1992). Therefore, a court of common pleas is competent to consider those issues that it must decide in order to determine whether or not it possesses subject-matter jurisdiction. When such issues are actually and directly litigated, the doctrine of issue preclusion prevents the parties and their privies from reopening those issues in a subsequent action. *Heller v. Pre-Paid Legal Servs., Inc.*, 9th Dist. No. 26376, 2013-Ohio-680, ¶ 19; *Lewis v. Cleveland*, 8th Dist. No. 95110, 2011-Ohio-347, ¶ 16-18; *Diagnostic & Behavioral Health Clinic, Inc. v. Jefferson Cty. Mental Health, Alcohol & Drug Addiction Bd.*, 7th Dist. No. 01 JE 5, 2002-Ohio-1567, ¶ 14-18.

{¶ 20} Thus, for example, if a court of common pleas decides that jurisdiction is properly before the Court of Claims of Ohio because the defendant in the action before it is a state agency, the doctrine of issue preclusion will bar relitigation of the defendant's agency status. *Diagnostic & Behavioral Health Clinic* at ¶ 14. In a subsequent action, the parties cannot again raise the issue underlying the jurisdictional determination—whether the defendant is a state agency or not. Consequently, a second, identical action brought in a court of common pleas will result in dismissal. *See George v. State*, 10th Dist. No. 10AP-4, 2010-Ohio-5262, ¶ 16 (holding that if a common pleas court dismisses an action because jurisdiction is properly before the Court of Claims, an identical action "refiled in

the same forum * * * could only, by operation of [issue preclusion], be dismissed on the same grounds").

{¶ 21} However, dismissal of a second action is not appropriate if, in the interim subsequent to the initial dismissal, there are developments that "cure" the jurisdictional deficiency identified in the first suit. *Citizen Electronics Co., Ltd. v. OSRAM GmBH*, 225 Fed.Appx. 890, 893 (Fed.Cir.2007); *GAF Corp. v. United States*, 818 F.2d 901, 912-13 (D.C.Cir.1987). Under the curable-defect doctrine, a party may bring a suit again " 'where a jurisdictional defect has been cured or loses its controlling force.' " *Park Lake Resources Ltd. Liability Co. v. United States Dept. of Agriculture*, 378 F.3d 1132, 1137 (10th Cir.2004), quoting *Eaton v. Weaver Mfg. Co.*, 582 F.2d 1250, 1256 (10th Cir.1978). A post-dismissal cure forestalls the application of issue preclusion because it changes the facts or occurrences that a court must consider to decide whether it has jurisdiction. Where there has been a change of facts or occurrences since a decision was rendered, which would have been relevant to the resolution of a material issue involved in the earlier action, the doctrine of issue preclusion will not bar litigation of that issue in the later action. *State ex rel. Westchester Estates, Inc. v. Bacon*, 61 Ohio St.2d 42 (1980), paragraph two of the syllabus.

{¶ 22} Here, the trial court originally dismissed OHFA's action because it found that it lacked subject-matter jurisdiction to proceed once a final judgment terminated the action. OHFA cured the defect that prevented the trial court from exercising jurisdiction by initiating an original action against defendants. Thus, the circumstances relevant to the jurisdictional determination changed after the May 9, 2011 judgment of dismissal. Consequently, we conclude that issue preclusion did not bar relitigation of the jurisdictional question, and we reject defendants' issue preclusion argument.

{¶ 23} We next turn to defendants' argument that claim preclusion requires judgment in their favor. By this argument, defendants contend that OHFA cannot now bring its claims against them because it could have asserted those claims in its action against Waterford. We reject defendants' argument because they have not established all of the requirements for the application of claim preclusion.

{¶ 24} " 'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of the transaction that was the subject

matter of a previous action.' " *Nickoli*, 124 Ohio St.3d 449, 2010-Ohio-606, at ¶ 21, quoting *Ft. Frye Teachers Assn.*, 81 Ohio St.3d 392 at 395. Under claim preclusion, a previous judgment is conclusive as to all claims that were or could have been litigated in the first action. *State ex rel. Schachter v. Ohio Public Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, ¶ 27. Thus, a plaintiff must present every ground for relief in the first action or be forever barred from asserting it. *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000).

{¶ 25} In order to invoke res judicata (either claim or issue preclusion), a party must establish that the parties in the subsequent action are identical or in privity with those in the former action. *Nickoli* at ¶ 22; *Schachter* at ¶ 32. Privity in the context of res judicata is an amorphous concept. *Schachter* at ¶ 33; *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 9. Generally, entities are in privity when the " 'relationship between the one who is a party on the record and another is close enough to include that other within the *res judicata*.' " (Emphasis sic.) *Brown* at 248, quoting *Thompson v. Wing*, 70 Ohio St.3d 176, 184 (1994).

{¶ 26} The Supreme Court of Ohio has used multiple methods of measuring when privity exists. A person is in privity with a party if that person succeeded to the interest of the party, controlled the original suit, or had an interest in the result of and actively participated in the original suit. *O'Nesti* at ¶ 9. Privity also may arise between a party and another if the other person shares a " 'mutuality of interest, including an identity of desired result,' " with the party. *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, ¶ 8, quoting *Brown* at 248.

{¶ 27} Defendants were not parties to the action between OHFA and Waterford, so defendants may only rely on claim preclusion if they can establish that they are in privity with Waterford. Defendants first argue that because they are in contractual privity with Waterford, they have demonstrated that privity exists for res judicata purposes. We are hesitant to equate contractual privity with the concept of privity developed in the res judicata context. The Supreme Court of Ohio has never found the two types of privity to be interchangeable. Nevertheless, even if we assume that contractual privity is sufficient to satisfy the identity of parties requirement of res judicata, we are not persuaded that defendants have proven contractual privity with Waterford.

{¶ 28} "Privity of contract" is "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so." Black's Law Dictionary (9th Ed.2009). "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161 (1991).

{¶ 29} Here, defendants claim that contractual privity exists because they and Waterford are subject to contracts that are part of the same loan transaction. However, this relationship does not allow defendants to sue or be sued on contracts, such as the Direct Loan Agreement, to which they are not parties, but Waterford is. Consequently, there is no contractual privity between defendants and Waterford solely by virtue of their participation in the same loan transaction.

{¶ 30} Defendants next argue that privity exists between them and Waterford because they all share a mutual interest in preventing OHFA from recovering on its loan. In this case, however, we find that mutuality of interest is insufficient to establish privity. To find privity in these circumstances would not serve justice because it would create conflict in the law. Res judicata does not apply where fairness and justice would not support it. *State ex rel. Estate of Miles v. Piketon*, 121 Ohio St.3d 231, 2009-Ohio-786, ¶ 30; *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 491 (2001).

{¶ 31} Defendants and Waterford have common interests because defendants unconditionally guaranteed the loan that OHFA made to Waterford. Once Waterford defaulted on the loan, defendants, as guarantors, became equally liable with Waterford, the principal debtor, to repay the loan. *Woods-Tucker Leasing Corp. v. Kellum*, 641 F.2d 210, 215 (5th Cir.1981), fn. 7. Both defendants and Waterford, therefore, owe OHFA an obligation to recompense OHFA for its loss, i.e., the amount outstanding on the loan. The mutual interest defendants and Waterford share arises because all three are liable for OHFA's loss.

{¶ 32} "A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." Restatement of the Law 2d, Judgments, Section 49 (1982); *accord White v. Kelsey*, 935 F.2d 968, 970 (8th Cir.1991); *Gill & Duffus Servs., Inc. v. Islam*, 675 F.2d 404, 404-05 (D.C.Cir.1982). In other words, when a plaintiff files consecutive actions against different

persons liable for the same injury, judgment in the first action does not bar the plaintiff's claims against other persons who are potentially liable for the loss in question. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367 (2d Cir.1995); *Dickieson v. DER Travel Serv., Inc.*, 149 F.Supp.2d 1011, 1014 (N.D.Ill.2001); *accord Fate v. Dixon*, 649 F.Supp. 551, 556 (E.D.N.C.1986) ("So, although it is true * * * that a judgment is conclusive as to all matters within the scope of the pleadings which could and should have been adjudicated, those matters do not include claims against unnamed defendants who may have also been liable for the harm to the plaintiff."). Consequently, "[t]he doctrine of res judicata does not bar a plaintiff who has successfully sued an obligor from maintaining an action against a co-obligor." *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir.1992); *accord Badger v. Berritto*, S.D.N.Y. No. 99 Civ. 12463(DC) (Nov. 17, 2000) (plaintiffs are "free to proceed against the principal obligor first, deferring any action against the guarantor * * * until after it becomes clear that such an action is necessary because the principal obligor is unwilling or unable to satisfy any judgment").

{¶ 33} To hold otherwise would effectively create a rule of mandatory joinder. *Lacey* at 412. A plaintiff would have to sue all parties sharing the same interest in its initial action in order to avoid the res judicata bar. However, under Civ.R. 20(A), joinder of potentially liable defendants is permissive. *See White* at 970 (discussing Fed.R.Civ.P. 20, which is virtually identical to Civ.R. 20); *Islam* at 407 (same). Thus, "[t]o extend claim preclusion in favor of new defendants, who were not named or served as parties in the earlier litigation, would be dubious as a matter of policy." *Iantosca v. Step Plan Servs., Inc.*, 604 F.3d 24, 30 (1st Cir.2010).

{¶ 34} Here, defendants' mutual interest with Waterford exists because both appellants and Waterford are liable for the same loss. A finding that privity, and thus res judicata, arises based on that mutual interest would negate the rule that plaintiffs may sue potentially liable defendants separately. Application of res judiciata in these circumstances would mean that plaintiffs who decided not to join all potentially liable defendants—as permitted by Civ.R. 20(A)—would find their subsequent lawsuits barred. To prevent inconsistency in the law, we conclude that defendants' mutuality of interest with Waterford does not establish privity between the parties.

{¶ 35} Defendants also argue that there is privity between them and Waterford because they actively participated in the original suit. The original suit, i.e., the suit against Waterford, ended with the December 17, 2010 judgment. Defendants did not participate until after that date. Therefore, they did not participate in the original suit, and they cannot claim privity exists on that basis.

{¶ 36} Finally, defendants contend that Harding is in privity with Waterford because he controlled Waterford. As we stated above, privity may arise if a nonparty demonstrates that it controlled the original litigation. *O'Nesti*, 113 Ohio St.3d 59, 2007-Ohio-1102, at ¶ 9. To have control over litigation, a person must " ' "have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action." ' " *Living Care Alternatives of Kirkersville, Inc. v. United States*, 247 Fed.Appx. 687, 697-98 (6th Cir.2007). Here, the original litigation consisted of OHFA: (1) suing on the Cognovit Promissory Note, (2) confessing judgment on Waterford's behalf, and (3) receiving a cognovit judgment against Waterford. Waterford had no control over this litigation; it relinquished control when it executed the Cognovit Promissory Note. Consequently, Harding's control over Waterford did not equate to control over the litigation, and thus, Harding's control-based privity argument fails.

{¶ 37} Due to the absence of privity between Waterford and defendants, the original action against Waterford does not preclude OHFA from subsequently suing defendants on their guaranties. Because we have rejected defendants' issue and claim preclusion arguments, we find no error in the trial court's denial of summary judgment to defendants. Accordingly, we overrule the first assignment of error.

{¶ 38} By defendants' second assignment of error, they argue that the trial court erred in granting OHFA summary judgment because OHFA's material alteration of the terms of the loan discharged them from their guaranty obligations. We disagree.

{¶ 39} Generally, " '[a] guaranty is a contract through which one party guarantees payment for debts incurred by another person or entity.' " *LB-RPR REO Holdings, LLC v. Ranieri*, 10th Dist. No. 11AP-471, 2012-Ohio-2865, ¶ 23, quoting *Thayer v. Diver*, 6th Dist. No. L-07-1415, 2009-Ohio-2053, ¶ 77. Before executing a guaranty, a guarantor assesses the risk that it will have to assume liability for the underlying obligation. If, after the guarantor executes the guaranty, the creditor does something that changes the risks

that were the subject of the guarantor's risk assessment, there is the potential for loss that the guarantor could not anticipate. In such situations, the law provides the guarantor with rights against the creditor. Among these rights are "partial or complete discharges of the [guarantor's] duties pursuant to the [guaranty] * * * frequently called 'suretyship defenses.' " Restatement of the Law 3d, Suretyship and Guaranty, Chapter 3 Introductory Note (1996); *accord O'Brien v. Ravenswood Apts. Ltd.*, 169 Ohio App.3d 233, 2006-Ohio-5264, ¶ 22 (1st Dist.) ("A guarantor can defend against enforcement of a guaranty where the creditor has impaired the guarantor's suretyship status."); Peter Alces, *Law of Suretyship*, Section 8.1 (2013) ("[W]hen the [creditor] increases the risk to which the [guarantor] would be subject in ways not contemplated in the contract, the [guarantor] may have grounds to avoid in whole or part his liability to the [creditor].").

{¶ 40} Under Ohio law, a guarantor is discharged from liability whenever the terms of the contract or the nature of the obligation guaranteed is materially altered without the guarantor's consent. *Cambria Iron Co. v. Keynes*, 56 Ohio St. 501, 511 (1897); *Voelker-Belz Co. v. Johnson*, 10th Dist. No. 04AP-280, 2004-Ohio-6719, ¶ 11. This is a suretyship defense. *Playboy Ents. Inc. v. Sanchez-Campuzano*, 519 Fed.Appx. 219, 223 (5th Cir.2013); *In re Greektown Holdings, LLC*, E.D.Mich. No. 13-10291 (July 9, 2013).

{¶ 41} The terms of the guaranty ultimately govern the scope of the guarantor's liability. *O'Brien* at ¶ 23; *Johnson* at ¶ 11. As part of those terms, a guarantor may waive its suretyship defenses. *O'Brien* at ¶ 22; *HCRI TRS Acquirer, LLC v. Iwer*, 708 F.Supp.2d 687, 692 (N.D.Ohio 2010); *accord* Restatement of the Law 3d, Suretyship and Guaranty, Section 48, Comment a ("The [guarantor], if it so chooses, may forego [the] protection [of suretyship defenses]. Indeed, in many suretyship contexts, it is routine to do so. Accordingly, the [guarantor] is not discharged as a result of loss caused by actions of the [creditor] to which the [guarantor] consents."). If a guaranty's terms are clear and unambiguous, a court must construe those terms as written. *Ranieri* at ¶ 23; *accord Johnson* at ¶ 12, 18 (giving a waiver provision contained in a guaranty its plain and ordinary meaning).

{¶ 42} Here, defendants assert that OHFA materially altered the terms of the Direct Loan Agreement when it disbursed the loan principal without ensuring that Waterford had performed all the conditions precedent. Defendants maintain that this

alteration discharges them from their obligations to guarantee the loan. In response, OHFA points out that both guaranties include language that states, "Guarantor hereby waives all suretyship defenses." OHFA thus argues that defendants cannot assert the material-alteration defense.

{¶ 43} We agree with OHFA's argument. In their guaranties, defendants unambiguously waived all suretyship defenses. The material-alteration defense, therefore, does not excuse defendants' obligation to repay the loan. Accordingly, we overrule defendants' second assignment of error.

{¶ 44} By defendants' third assignment of error, they argue that the trial court erred in adding to the damages award against Harding prejudgment interest that exceeded the monetary liability limitation in Harding's guaranty. We disagree.

{¶ 45} Pursuant to R.C. 1343.03(A):

> In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any * * * instrument of writing * * *, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code * * *.

Once a plaintiff receives judgment on a contract claim, the trial court has no discretion other than to award prejudgment interest under R.C. 1343.03(A). *Gates v. Praul*, 10th Dist. No. 10AP-784, 2011-Ohio-6230, ¶ 60; *Cantwell Mach. Co. v. Chicago Mach. Co.*, 184 Ohio App.3d 287, 2009-Ohio-4548, ¶ 30 (10th Dist.); *Zunshine v. Cott*, 10th Dist. No. 06AP-868, 2007-Ohio-1475, ¶ 25. Prejudgment interest makes the aggrieved party whole by compensating it for the lapse of time between the accrual of the claim and judgment. *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 117 (1995). Awarding prejudgment interest also encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. *Id.* at 116-17.

{¶ 46} No Ohio court has addressed whether a monetary limit on liability included in a guaranty prohibits an award of prejudgment interest that exceeds the limit. However, the Supreme Court of Ohio has addressed an analogous issue. In *Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, the court considered whether an award of prejudgment interest against an insurer could exceed an insured's policy limits. The court held that an

insurer is liable for an entire award up to the insured's policy limits plus any prejudgment interest awarded on that policy limit. *Id.* at ¶ 31. In so holding, the court reasoned:

> If we were to adopt [the insurer's] position it would frustrate the policy of encouraging settlement, since there would be little incentive for an insurer to settle a meritorious claim. The insurer in such a situation, knowing that its loss is confined to the insured's policy limit, has less incentive to prevent protracted litigation in which the insured is deprived of the use of the money. Once a lengthy litigation process is complete, the insured is not compensated for the lapse of time between the accrual of the claim and judgment. The insurer would clearly have the benefit of retaining control over, and earning interest on, money due and payable to their insured. We find that such a result would clearly contradict the well-established statutory and common-law basis for prejudgment interest.

*Id.* at ¶ 29.

{¶ 47} Moreover, courts outside of Ohio have concluded that a creditor may recover prejudgment interest even though that interest increases the judgment beyond the guaranty's liability limit if the interest accrues as a matter of law. *Armstrong v. Bank of Am., N.A.*, 776 So.2d 326, 326-27 (Fla.App.2001); *Dale E. Drake & Co., Inc. v. Fluke*, 91 Wash.App. 1071 (1998); *Kansas State Bank & Trust Co. v. DeLorean*, 7 Kan.App.2d 246, 254 (1982); *Walton v. Washington Cty. Hosp. Assn.*, 178 Md. 446, 452 (1940). Given this precedent and the holding in *Miller*, we conclude that the trial court did not err in awarding OHFA prejudgment interest that exceeded the $1,115,000 limitation on liability in Harding's guaranty. The award of such interest was mandatory under R.C. 1343.03(A) and it served the purposes for which prejudgment interest is awarded. Accordingly, we overrule defendants' third assignment of error.

{¶ 48} By defendants' fourth assignment of error, they argue that the trial court erred in denying their motions for a stay of execution of judgment and to vacate the garnishment order. Defendants cannot prevail on either argument.

{¶ 49} First, we find that, by contesting the trial court's denial of the motion for a stay, the defendants raise a moot issue. Defendants requested a stay from the trial court before they filed their notice of appeal. After the trial court denied the stay, defendants initiated their appeal and Harding filed a motion for a stay before this court. We granted the motion conditioned upon the posting of a supersedeas bond in the amount of

$1,616,075. Harding then posted the appropriate amount with the Franklin County Clerk of Courts.

{¶ 50} As a general matter, courts will not resolve moot issues. *In re L.W.*, 168 Ohio App.3d 613, 2006-Ohio-644, ¶ 11 (10th Dist.). An issue is moot if a judgment, when rendered, could not have any practical legal effect on a then existing controversy. *Id.* Here, even when challenged, defendants failed to identify any legal relief they could receive if this court reversed the trial court's denial of the stay. Defendants have already received the relief they requested—the stay of execution of the judgment—through this court. Consequently, the question of whether the trial court erred in denying the motion for a stay is moot, and we decline to review it.

{¶ 51} We next turn to the second part of defendants' fourth assignment of error— their contention that the trial court erred in denying their motion to vacate the garnishment order. OHFA asserts that we cannot consider this question because the order denying the motion to vacate is not a final, appealable order.[2]

{¶ 52} Article IV, Section 3(B)(2) of the Ohio Constitution establishes that courts of appeals "have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Pursuant to R.C. 2505.03(A), appellate courts may review final orders, judgments, and decrees. *Flynn v. Fairview Village Retirement Community, Ltd.*, 132 Ohio St.3d 199, 2012-Ohio-2582, ¶ 5. To qualify as a final, appealable order, the order, judgment, or decree must satisfy the criteria of R.C. 2505.02. *Id.*

{¶ 53} Final, appealable orders include orders "that affect[ ] a substantial right made in a special proceeding or upon a summary application in an action after judgment." R.C. 2505.02(B)(2). Garnishment proceedings are special proceedings under R.C. 2505.02. *Januzzi v. Ford Motor Co.*, 9th Dist. No. 89CA004603 (May 16, 1990), *aff'd*, 61 Ohio St.3d 40 (1991). The "right to keep one's property free from attachment by judgment creditors" is a substantial right. *State v. McKinley*, 4th Dist. No. 97CA08 (Dec. 15, 1997). Accordingly, we find that the denial of a motion to vacate a garnishment order is a final,

---

[2] OHFA's jurisdictional "argument" consists of one sentence. When presenting argument before this court, all parties should fully analyze the issues raised and provide supporting legal citations.

appealable order. *Id.* (holding that a denial of a "Motion to Vacate Garnishment Rights" was a final, appealable order).

{¶ 54} Turning to the merits of the issue, we must decide if, as defendants argue, the stay issued by this court required the trial court to vacate the garnishment order. We find that it did not.

{¶ 55} The issuance of an order to stay execution of judgment has no effect upon any enforcement proceedings that have already taken place. *McCarthy v. Lippitt*, 7th Dist. No. 04-MO-1, 2004-Ohio-5367, ¶ 36; *Hagood v. Gail*, 105 Ohio App.3d 780, 791 (11th Dist.1995). The object of a stay conditioned on the posting of a supersedeas bond is to stop future proceedings, not to undo what is already done. *Dibert v. Ross Pattern Foundry & Dev. Co., Inc.*, 160 N.E.2d 862, 864 (2d Dist.1957). Thus, whatever is done to enforce the judgment before the stay takes effect is upheld by the authority of the judgment, and not overarched by the stay. *Id.* at 864-65.

{¶ 56} Here, the trial court issued the garnishment order prior to the advent of the stay. While the stay prevented any further enforcement of the garnishment order, it did not provide a basis for vacating the garnishment order. We thus conclude that the trial court did not err in denying defendants' motion to vacate.

{¶ 57} In sum, we find moot defendants' challenge to the denial of the motion for a stay of execution of judgment, and we reject defendants' argument that the trial court erred in denying the motion to vacate. Accordingly, we dismiss in part and overrule in part defendants' fourth assignment of error.

{¶ 58} Finally, we must address OHFA's motion to strike Harding's October 21, 2013 notice of additional authority. OHFA's motion additionally seeks sanctions against defendants for filing the notice of additional authority. We deny OHFA's motion in its entirety. Harding's notice referred this court to a newly decided case relevant to one of the issues in this appeal.

{¶ 59} For the foregoing reasons, we overrule defendants' first, second, and third assignments of error; we dismiss in part and overrule in part defendants' fourth

assignment of error; and we deny OHFA's motion to strike and for sanctions.  We affirm the judgments of the Franklin County Court of Common Pleas.

*Motion denied; judgments affirmed.*

TYACK and CONNOR, JJ., concur.

———————————