NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0878n.06
Filed: October 31, 2005

No. 04-6229

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TROY AND CHERYL OGLE, | ) | |
| | ) | |
| Petitioners-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| CHURCH OF GOD; WILLIAM A. | ) | STATES DISTRICT COURT FOR |
| DAVIS; R. LAMAR VEST; JOHN K. | ) | THE EASTERN DISTRICT OF |
| VINING; BILL F. SHEEKS; RICK | ) | TENNESSEE |
| HOCKER; RAY PHILLIPS; WALTER | ) | |
| D. WATKINS; ROGER DANIEL; H. | ) | |
| LYNN STONE; MARK L. WILLIAMS; | ) | |
| WILLIAM M. GASKIN; DONNIE W. | ) | |
| SMITH; DARRELL W. WALLER; | ) | |
| TIMOTHY NUCKLES; JOHN BRIGGS; | ) | |
| ORVILLE HAGAN, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

**Before: CLAY and GIBBONS, Circuit Judges; and STEEH, District Judge**[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Troy D. Ogle brought suit against the Church

of God in the United States District Court for the Eastern District of Michigan, asserting claims of

breach of implied contract, tortious interference with business relationships, invasion of privacy,

_____

[*] The Honorable George Caram Steeh, United States District Judge for the Eastern
District of Michigan, sitting by designation.

1

conspiracy, intentional infliction of emotional distress, and defamation. Ogle , and his wife, Cheryl Ogle, also claimed loss of consortium. The complaint sought a declaratory judgment and punitive damages. After the case was transferred to the Eastern District of Tennessee, the district court found that the court lacked subject matter jurisdiction over the claim as a matter of First Amendment law.

For the following reasons, we affirm the decision of the district court.

**I.**

Petitioner Ogle has spent over twenty-two years in the ministry as an ordained bishop under the authority of the Church of God. The Church of God is a not-for-profit corporation with its international office in Cleveland, Tennessee.

On July 27, 2001, Ogle began a ten-day ministry trip to Brussels, Belgium with Rick Hocker, another pastor in the Church of God. Upon his return to the United States, Hocker wrote a memorandum to William A. Davis, the Administrative Bishop of the Virginia Church of God, reporting that during the trip, Ogle had made sexual advances toward him that had made him intensely uncomfortable and caused him to leave Brussels earlier than planned. This letter constituted a formal charge under the Minutes of the General Assembly of the Church of God. As a result of Hocker's letter, Davis convened a fact-finding committee to investigate the allegations of inappropriate behavior. The fact-finding committee met with Ogle and Hocker in the course of investigation. Upon completion of the investigation on August 22, 2001, the committee issued a report containing the following recommendations:

1. That Troy Ogle be placed under the supervision of a Christian counselor to explore the issues of sexuality, modesty, humanity, and faith;
2. That Troy Ogle travel with his wife and never stay in the same room alone with any man;
3. That Rick Hocker be given specific instructions about how he handles this issue,

2

i.e., who he should tell, what should and should not be told, etc.

4. That Evangelist Paul Edgerton be interviewed by Bishop Davis regarding his travels abroad with Troy Ogle.

During the next few months, Davis received several other written statements detailing similar inappropriate advances Ogle had made against other members of the church staff and clergy. A second fact-finding committee was convened to investigate the situation further. On October 15, 2001, the fact-finding committee issued a second report based on interviews with Ray Phillips, a Youth Minister at the Stratford Heights Church of God, and with Ogle. The fact-finding committee unanimously voted to bring Ogle before an official trial board for an ecclesiastical hearing governed by the Holy Scriptures and the Church of God Book of Minutes on the charge of "unbecoming conduct with the same sex." Ogle was not permitted to have counsel present but was allowed to have another minister appear with him for "personal support" and to bring witnesses on his behalf.

The hearing was held on November 29, 2001. Ogle was found guilty of "unbecoming ministerial conduct," resulting in the suspension of his license for one year. Ogle was also ordered to undergo counseling with psychologist Rick Gillon. Ogle asserts in his complaint that members of the Church attempted to interfere with the process. Upon completion of the counseling sessions, Gillon recommended that he be returned to full-time ministry. The Michigan Church of God State Council approved Ogle's reinstatement based on his completion of the restoration program. Ogle presented his restoration and reinstatement request to the September 2002 International Executive Council. The International Executive Council issued a statement in response to Ogle's request informing Ogle that they had decided to delay action on the reinstatement process until "matters pertaining to the specifics of the reinstatement process are further clarified." When Ogle requested further information on why his reinstatement was being delayed, he was told that "there were some

things they wanted to see." At this time, Ogle has not been reinstated to his ministry with the Church of God.

Ogle and his wife, Cheryl Ogle, filed a complaint on November 15, 2002 against the Church of God and various individuals, asserting claims of breach of implied contract, tortious interference with business relationships, invasion of privacy, conspiracy, intentional infliction of emotional distress, defamation, and loss of consortium. The complaint also sought a declaratory judgment and punitive damages. The defendants filed a motion to dismiss for lack of subject matter jurisdiction or transfer of venue. The district court denied defendants' motion to dismiss and granted the motion to transfer venue, transferring the case to the United States District Court for the Eastern District of Tennessee. Defendants filed a motion to dismiss in the Eastern District of Tennessee pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

The district court converted defendants' motion to dismiss into a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) because defendants filed the motion after filing their answer to the complaint. The court then treated the motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 because the parties had presented matters outside the pleadings. The district court granted the motion for summary judgment on September 9, 2004, finding that the court lacked subject matter jurisdiction over Ogle's claims as a matter of law. Ogle filed a timely notice of appeal on September 30, 2004.

## II.

Ogle first argues that the district court erred in converting the defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) into a motion for a judgment on the pleadings pursuant to

4

Rule 12(c) and then into a summary judgment motion pursuant to Rule 56. We agree that the district court erred in its treatment of the motion. Parties cannot consent to subject matter jurisdiction where it is lacking, nor can they waive it. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir. 2004). Therefore, "[t]he existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). The court must determine whether subject matter jurisdiction exists before making any decision on the merits. *Moir v. Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (noting that the 12(b)(1) motion must be decided before any consideration of a motion on the merits can occur). Moreover, a trial court has broad discretion in what to consider in deciding whether subject matter jurisdiction exists in a particular case. *Id.* ("the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged").

The court in this case erred by converting the motion to a Rule 12(c) motion for judgment on the pleadings because the Rule 12(c) motion is a decision on the merits that cannot be decided without first determining whether subject matter jurisdiction is proper, regardless of whether the court used the factual record to resolve that threshold inquiry. The subsequent conversion to a Rule 56 motion for summary judgment was in error for the same reason. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (noting that the district court erred in converting a Rule 12(b)(1) motion into a Rule 56 motion, and further noting that a Rule 12(b)(1) motion is the proper vehicle for considering whether subject matter jurisdiction exists in a particular case). Therefore, we review the district court's determination for lack of subject matter jurisdiction as a motion to dismiss pursuant to Rule 12(b)(1).

Ogle next argues that the district court erred in ruling that the court lacks subject matter

jurisdiction as a matter of law. After reviewing the claims, the court held that the Free Exercise Clause of the First Amendment barred the exercise of jurisdiction over any of Ogle's claims because all of the claims arose out of Ogle's experiences with the Church of God disciplinary process.

This court reviews a district court's determination that it lacks subject matter jurisdiction *de novo*. *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 674 (6th Cir. 2005). The plaintiff, as the party invoking federal subject matter jurisdiction, bears the burden of persuading the court that subject matter jurisdiction exists in the case. *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005). A facial attack on subject matter jurisdiction challenges the sufficiency of the pleading, and in reviewing such an attack, the court takes the allegations in the complaint as true. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. Where the defendant brings a factual attack on subject matter jurisdiction, no presumption of truth applies to the allegations contained in the pleadings, and the court may consider documentary evidence in conducting its review. *Id.*

The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. The Supreme Court has held that in matters involving "questions of discipline, or of faith, or ecclesiastical rule, custom, or law[,]" the Free Exercise Clause requires that no civil court interfere with the determinations of the "highest of these church judicatories to which the matter has been carried." *Watson v. Jones*, 80 U.S. 679, 727 (1871); *see Lewis v. Seventh Day Adventists Lake Region Conference*, 978 F.2d 940, 941-42 (6th Cir. 1992). The Sixth Circuit has unambiguously stated that "the First Amendment bars civil courts from reviewing decisions of religious judicatory bodies relating to the employment of clergy." *Lewis*, 978 F.2d at 942. *See also Yaggie v. Ind.-Ky. Synod, Evangelical Lutheran Church*, No. 94-5892, 1995 WL 499468, at *3 (6th Cir. Aug. 21, 1995)

6

("The general rule is that federal courts should be loathe to assert jurisdiction over internal church disputes.") (citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709-10 (1995) and *Presbyterian Church v. Hull Church*, 393 U.S. 440, 449 (1969)).

The district court was correct in holding that "upon a review of the record, including the pleadings and evidence submitted by the parties, it is clear that regardless of how the claims set forth in the plaintiffs' complaint may be labeled, resolving the plaintiffs' claims would require[] this court to enter into areas implicating the First Amendment." Ogle's claims of breach of implied contract, tortious interference with business relationships, conspiracy, invasion of privacy, and defamation, as well as his request for a declaratory judgment that the charging body within the Church of God lacked the legal or other proper authority to bring charges against him, all implicate the Church of God's internal disciplinary proceedings. As a result, this court cannot have subject matter jurisdiction over them.[*] The district court was also correct in holding that Ogle's intentional infliction of emotional distress, loss of consortium, and punitive damages claims are derivative of the other claims. Therefore, the court's lack of subject matter jurisdiction over the primary claims necessarily results in lack of jurisdiction over the secondary claims.

On appeal, Ogle focuses on the defamation claim in particular and argues that the court has jurisdiction because defamation claims are not governed by Church of God law, but rather are governed by Michigan statutory and common law. Ogle attempts to argue that, like the libel, negligence, and intentional interference with legitimate expectation claims brought by the plaintiff-minister in *Drevlow v. Lutheran Church*, 991 F.2d 468 (8th Cir. 1993), his claims do not "implicate religious beliefs, procedures, or law[,]" but rather rest upon secular considerations. *Id.* at 472. This

---

[*]The district court opinion addresses each of these claims individually and in detail.

argument fails. The record on the motion to dismiss is sufficient to indicate that all of defendants' actions of which Ogle complains were part of church disciplinary proceedings which were initiated precisely because Ogle's actions violated the Church of God Minutes of the General Assembly. The district court was correct in holding that this case falls squarely within the class of cases for which the courts lack subject matter jurisdiction as a matter of First Amendment law.

Ogle also argues on appeal that even if the court ordinarily would lack subject matter jurisdiction over this type of claim, Ogle can avail himself of the exception created by *Milivojevich*, which suggests that there may be room for some "'marginal civil court review' under the narrow rubrics of 'fraud' or 'collusion' when church tribunals act in bad faith for secular purposes." 426 U.S. at 713. This argument also fails. First, as this court has previously noted, the "exception" in *Milivojevich* was for 'marginal review' only and "the possibility of such review was not endorsed, but merely left for later consideration." *Hutchison v. Thomas*, 789 F.2d 392, 395 (6th Cir. 1986). Second, this court has not found a situation in which it allowed a claim to go forward despite the First Amendment bar pursuant to the possibility for an exception left open in *Milivojevich. See id*. Furthermore, the allegations contained in his complaint hardly indicate that the Church of God disciplinary process was the result of fraud, collusion, or bad faith for secular purposes. As a result, the district court was correct in holding that subject matter jurisdiction is lacking in this case.

**III.**

For the foregoing reasons, although we disagree with the District Court's treatment of the motion as a motion for summary judgment, we affirm its holding that it lacked subject matter jurisdiction over this case as a matter of First Amendment law and its dismissal of the case.