[Cite as *Doe v. Pontifical College Josephinum*, 2017-Ohio-1172.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [John Doe], | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-300 |
| v. | : | (C.P.C. No. 15CV-10780) |
| Pontifical College Josephinum, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 30, 2017

**On brief:** *Engel and Martin, LLC*, and *Joshua Adam Engel*, for appellant.

**On brief:** *Harris McClellan Binau & Cox PLL*, and *Mark S. Coco*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

TYACK, P.J.

{¶ 1} Plaintiff-appellant, John Doe ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas dismissing his claims against defendant-appellee, Pontifical College Josephinum ("the Josephinum"), for lack of subject-matter jurisdiction pursuant to the ecclesiastical abstention doctrine. For the reasons that follow, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In December 2015, appellant filed a complaint in the common pleas court asserting that he was a former student at the Josephinum in a program designed to prepare students for careers as priests in the Roman Catholic Church. Appellant claimed he had enrolled in the Josephinum in August 2010 and was scheduled to graduate in May 2016 with a master's degree in theology. Appellant alleged that, in October 2015, he had a

meeting with the Rector and Vice Rector of the Josephinum. At that meeting, the Vice Rector notified appellant that he had been dismissed from the Josephinum pursuant to an investigation conducted by the Vice Rector, in which the Vice Rector determined that there was a "credible accusation of homosexual activity" by appellant. (Dec. 9, 2015 Amended Compl. at ¶ 19.) Appellant was asked to turn in his identification card and room key and advised to leave the campus of the Josephinum. The Josephinum subsequently posted a public notice that appellant had been expelled.

{¶ 3}   Appellant asserted he had requested access to his academic file, including any disciplinary files, from the Josephinum. The Josephinum provided certain records, but did not provide any records related to the alleged misconduct or his dismissal. Appellant claimed he had appealed his dismissal from the Josephinum under canon law, but was unable to present a credible defense in that appeal because he lacked records from the Josephinum relating to his dismissal.

{¶ 4}   Appellant's complaint asserted claims for breach of contract, intentional infliction of emotional distress, unauthorized disclosure of confidential educational records, and unjust enrichment. The complaint also sought an award of attorney fees for bad-faith conduct. The complaint was filed anonymously and accompanied by a motion for leave for appellant to proceed under the pseudonym "John Doe." The common pleas court denied appellant's motion to proceed under a pseudonym and ordered appellant to refile his complaint. Appellant refiled the complaint under his own name.

{¶ 5}   The Josephinum moved to dismiss the complaint under Civ.R. 12(B)(1), asserting that the common pleas court lacked subject-matter jurisdiction over appellant's claims. The Josephinum argued that determination of appellant's claims would necessarily require the court to inquire into an ecclesiastical disciplinary process, which was barred by the ecclesiastical abstention doctrine. The common pleas court granted the Josephinum's motion to dismiss, concluding that appellant's claims were inextricably entangled with his assertion that he was improperly dismissed from the Josephinum and prevented from becoming a priest. Therefore, the court reasoned, it would be impossible to consider the claims in appellant's complaint without also considering his allegation of improper dismissal from the Josephinum.

## II. ASSIGNMENTS OF ERROR

{¶ 6}   Appellant appeals and assigns the following two assignments of error for our review:

> [I]. THE TRIAL COURT COMMITTED ERROR BY DISMISSING THE COMP[L]AINT PURSUANT TO THE ECCLESIASTICAL ABSTENTION DOCTRINE.
>
> [II]. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO PERMIT THE PLAINTIFF TO PROCEED AS JOHN DOE.

## III. DISCUSSION

{¶ 7}   In his first assignment of error, appellant asserts that the trial court erred by dismissing his claims for lack of subject-matter jurisdiction pursuant to the ecclesiastical abstention doctrine. Appellant argues that the ecclesiastical abstention doctrine does not apply to the claims presented in his complaint because they do not require the court to review the Josephinum's decision to dismiss him from the school.

{¶ 8}   A court presented with a motion to dismiss for lack of subject-matter jurisdiction must determine whether the complaint states any cause of action cognizable by the forum. *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989); *PNC Bank, Natl. Assn. v. Botts*, 10th Dist. No. 12AP-256, 2012-Ohio-5383, ¶ 21. The trial court is not limited to the allegations of the complaint and may consider other pertinent material without converting the motion into a motion for summary judgment. *Lawton v. Howard*, 10th Dist. No. 13AP-878, 2014-Ohio-2660, ¶ 8. We review de novo a trial court's dismissal of an action for lack of subject-matter jurisdiction. *Deutsche Bank Natl. Trust Co. v. Finney*, 10th Dist. No. 13AP-198, 2013-Ohio-4884, ¶ 14.

{¶ 9}   The common pleas court concluded that it lacked subject-matter jurisdiction over appellant's claims pursuant to the ecclesiastical abstention doctrine. The ecclesiastical abstention doctrine arises from the First Amendment to the United States Constitution, which provides that " 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.' " *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 36, quoting the First Amendment to the United States Constitution. The Free Exercise Clause of the First Amendment requires that in matters of discipline, faith, or ecclesiastical rule, custom, or law, the civil courts

must not interfere with the determinations of a church's highest adjudicatory authority before which a matter has been heard. *Id.* at ¶ 36, citing *Ogle v. Church of God*, 153 Fed. Appx. 371, 375 (6th Cir.2005), citing *Watson v. Jones*, 80 U.S. 679, 727 (1871).

{¶ 10} "Under Ohio law, a civil court has subject-matter jurisdiction over a case involving a religious organization if the dispute is secular rather than ecclesiastical." *Zhelezny* at ¶ 37. *See also Harrison v. Bishop*, 6th Dist. No. L-14-1137, 2015-Ohio-5308, ¶ 41 (describing two-part test applied by some Ohio appellate courts to determine whether a court has subject-matter jurisdiction over a case involving a religious organization). The Eighth District Court of Appeals has held that, with respect to questions of " 'who should preach from the pulpit,' " civil courts generally lack jurisdiction to hear the dispute if the church is hierarchical. *Tibbs v. Kendrick*, 93 Ohio App.3d 35, 42 (8th Dist.1994). "[W]here [a] dispute involves non-doctrinal contractual disputes, a civil court retains jurisdiction to hear the dispute. Nonetheless, civil courts must not infringe upon a hierarchical church's disposition of an ecclesiastical dispute." (Citation omitted.) *Id.* The Josephinum is part of the Roman Catholic Church, which is a hierarchical religious organization. *See Plough v. Lavelle*, 170 Ohio App.3d 720, 2006-Ohio-6200, ¶ 18 (11th Dist.).

{¶ 11} Appellant asserts that this court's decision in *Zhelezny* establishes the limits of the ecclesiastical abstention doctrine and that, under the reasoning of *Zhelezny*, the common pleas court had jurisdiction over his claims. The plaintiff in *Zhelezny* asserted multiple claims against a church of which he had previously been a member, the pastor of that church, and various church leaders and members. *Zhelezny* at ¶ 2. The claims arose from restrictions that the church and pastor placed on the plaintiff's access to the church under a "ban letter," and various incidents that subsequently occurred at the church. *Id.* at ¶ 2-3. The plaintiff's claims included violation of his civil rights, intentional infliction of emotional distress, malicious prosecution, and civil conspiracy. *Id.* at ¶ 4. The trial court ultimately dismissed the complaint concluding, in part, that it lacked jurisdiction over the claims for civil rights violations, intentional infliction of emotional distress, and civil conspiracy under the ecclesiastical abstention doctrine. *Id.* at ¶ 35. On appeal, this court affirmed the trial court's conclusion with respect to the common law intentional infliction of emotional distress claim, holding that the claim was beyond the trial court's jurisdiction

because the evidence clearly established that the dispute was "born out of [the plaintiff's] estrangement from the church, his objections to the pastor, and his perception that church leadership mistreated him and his family." *Id.* at ¶ 38. The ban letter asserted that the pastor imposed restrictions on the plaintiff's access to the church because the plaintiff had engaged in " 'unacceptable and offensive behavior' " and subsequently extended because the plaintiff "did not behave 'in a Christian manner.' " *Id.* at ¶ 39. We concluded that "[t]he ecclesiastic abstention doctrine preclude[d] the court from adjudicating the merit of the pastor's decision." *Id.*

{¶ 12} By contrast, we reversed the trial court's conclusion that the claims for malicious prosecution and civil conspiracy were beyond its jurisdiction, holding that those claims could be decided independent of any ecclesiastical matters. The malicious prosecution claim was based on an assertion that the plaintiff had been invited to the church and subsequently prosecuted for trespassing. This claim was within the trial court's jurisdiction because it could "be determined without reference to the governing documents of the church and without a determination of the merits of the ban." *Id.* at ¶ 41. Likewise, the civil conspiracy claim was based on assertions that the pastor and various church leaders and members had regular meetings to discuss the plaintiff and make plans to continue his prosecution for trespassing. *Id.* at ¶ 56. This claim was within the trial court's jurisdiction because it could be "resolved without the need for an examination of purely ecclesiastical issues." *Id.* at ¶ 42.

{¶ 13} In the present case, as in *Zhelezny*, we must consider the basis for each of appellant's claims to determine whether the ecclesiastical abstention doctrine applies. Appellant argues that his breach of contract, unjust enrichment, and bad-faith conduct claims are based on civil contract law and would not require the trial court to resolve any issues related to his dismissal from the Josephinum. He further argues that his claims for intentional infliction of emotional distress and unauthorized disclosure of educational records arise from civil tort law and likewise would not require consideration of ecclesiastical issues. Although appellant argues that the trial court could resolve his claims without addressing ecclesiastic issues, it is clear that the alleged unjust dismissal lies at the core of each claim. Therefore, evaluating those claims would require the

common pleas court to consider issues related to the Josephinum's disciplinary process and the dismissal.

{¶ 14} The first count of the complaint, alleging breach of contract, is based on an argument that appellant has a contractual relationship with the Josephinum. Appellant claims that the terms of the contract are contained in the Josephinum's catalog and student handbook. Appellant asserts that he is entitled to his educational records, including records of disciplinary proceedings, under the terms of the Josephinum's student handbook and its "Privacy and Release of Student Education Records (FERPA)" policy, adopted pursuant to the federal Family Educational Rights and Privacy Act of 1974. Appellant further asserts that the Josephinum violated the implied covenant of good faith and fair dealing arising from the contractual relationship. Resolving this claim would involve an examination of the Josephinum's catalog and student handbook to determine whether a contractual relationship existed and, if so, whether appellant had a contractual right to obtain his records. Further, the trial court would be required to scrutinize the Josephinum's disciplinary procedure to determine whether any records created during the investigation were within the scope of appellant's alleged contractual right to access his records.

{¶ 15} The second and third counts of appellant's complaint, asserting intentional infliction of emotional distress and unauthorized disclosure of appellant's educational records, are based on claims that the Josephinum harmed appellant by posting a notice of his dismissal in a public space and disclosing his personal and confidential educational records. Resolving these claims would require the court to determine whether posting a notice of the dismissal was part of the Josephinum's disciplinary process. It would also be necessary to consider the content of the notice, to determine whether it contained personal or confidential information about appellant. Thus, the questions presented by these claims are inextricably intertwined with the underlying disciplinary process that led to the posting of the notice.

{¶ 16} In the fourth count of the complaint, appellant argues that permitting the Josephinum to retain appellant's tuition and fee payments would result in unjust enrichment because he was improperly dismissed without an explanation or opportunity to defend himself. By its own terms, this claim depends on an assertion that the dismissal

was improper. Thus, the trial court necessarily would be required to consider the basis for the disciplinary proceeding in assessing whether the dismissal was justified in order to determine whether it would be unjust for the Josephinum to retain any tuition or fee payments made by appellant.

{¶ 17} Finally, the fifth count of the complaint, seeking attorney fees due to bad-faith conduct, is related to the breach of contract claim, asserting that the Josephinum acted in bad faith by refusing to provide records that appellant was entitled to by contract. Similar to the breach of contract claim, resolving this claim would be contingent on determining whether appellant had a contractual right to any disciplinary records and whether the Josephinum acted in bad faith by refusing to provide those records. As explained above, the trial court would be required to consider the scope and result of the disciplinary proceeding to resolve these contractual claims.

{¶ 18} The claims presented in appellant's complaint are analogous to the intentional infliction of emotional distress claim in *Zhelezny*—in both cases, the claims were born out of the estrangement from the religious organization and the perception that the claimant was mistreated. *See Zhelezny* at ¶ 38. Analysis of each of appellant's claims necessarily implicates the procedure and result of the Josephinum's internal disciplinary proceedings. Therefore, under the ecclesiastical abstention doctrine, the civil courts lack jurisdiction over the claims asserted in appellant's complaint. *See Ogle* at 376 (holding that court lacked subject-matter jurisdiction over claims for breach of implied contract, tortious interference with business relationships, conspiracy, invasion of privacy, and defamation, as well as request for declaratory judgment because the claims "all implicate[d] the Church of God's internal disciplinary proceedings.").

{¶ 19} Accordingly, we overrule appellant's first assignment of error.

{¶ 20} In his second assignment of error, appellant argues that the common pleas court erred by denying his motion to proceed anonymously using a pseudonym. As explained above, we conclude that the common pleas court lacked subject-matter jurisdiction over all of the claims raised in appellant's complaint, irrespective of whether they were asserted in his own name or under a pseudonym. Accordingly, appellant's second assignment of error is rendered moot by our determination of his first assignment of error.

## IV.  CONCLUSION

{¶ 21}  For the foregoing reasons, we overrule appellant's first assignment of error and his second assignment of error is rendered moot. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER, J., concurs.
BRUNNER , J., concurs separately.

BRUNNER, J., concurring separately.

{¶ 22}  I concur with the decision of the majority and offer this separate opinion to discuss why FERPA, the Family Educational Rights and Privacy Act of 1974, as amended, does not save the appellant's action in the common pleas court.  The decision and record we have reviewed is for a complaint filed for the most part to afford appellant access to his educational records at the appellee's higher education religious institution.  The appellant, a student at the Pontifical College Josephinum ("college") was dismissed for reasons related to his allegedly being a "homosexual."  He has separately sued the college under canon law.  He seeks redress from the common pleas court because he has been denied access to his school records, which he needs for his canonical action, even though the college stated in its student materials that the student has the right to have access to his educational records under FERPA.

{¶ 23}  The record strongly suggests the college is bound by the requirements of FERPA.  The course catalog (which was incorporated by reference in the amended complaint at paragraph 12c) was not attached to either the original or amended complaint as contemplated in Civ.R. 10(D)(1), and appellant did not state the reason for that failure. (Dec. 9, 2015 Amended Compl.)  Appellant did allege, though, that the catalog was incorporated in the complaint and he then provided an internet URL as a citation to the document's location.  (Amended Compl. at ¶ 12c.)  There is some question about whether we can rely on the catalog in reaching a decision.  *See Morgan v. Ead*s, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13 ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.").

{¶ 24} However, there are cases indicating that, " '[m]aterial incorporated in a complaint may be considered part of the complaint.' " *RotoSolutions, Inc. v. Crane Plastics Siding, LLC*, 10th Dist. No. 13AP-1, 2013-Ohio-4343, ¶ 15, quoting *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249 (1997), fn.1; *see also Lisboa v. Lisboa*, 8th Dist. No. 95673, 2011-Ohio-351, ¶ 38-39. But such case results derive ultimately from when the material was incorporated <u>and</u> attached, which is not the case here. *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 109 (1995) (the case on which *Crabtree* and progeny rely). But whether such cases apply may be based on whether they were decided in the context of motions to dismiss under Civ.R. 12(B)(6) or under 12(B)(1). *Catudal v. Catudal*, 10th Dist. No. 15AP-1092, 2016-Ohio-8498, ¶ 28, citing *Estate of Sherman v. Millhon*, 104 Ohio App.3d 614, 617 (10th Dist.1995) (noting the differences in what materials can be considered in respect to Civ.R. 12(B)(6) and 12(B)(1) motions). But appellant's failure to comply with Civ.R. 10(D)(1) may not be fatal, because when a court reviews a dismissal based upon jurisdiction under Civ.R. 12(B)(1), the court "may consider any pertinent evidentiary materials." *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 10; *see also Lawton v. Howard*, 10th Dist. No. 13AP-878, 2014-Ohio-2660, ¶ 8. For the purposes of this concurrence I assume, without expressing an opinion, that the trial court could appropriately have considered the catalog.

{¶ 25} The course catalog includes a lengthy policy establishing rights accorded to students of the school in compliance with FERPA. 2015-2016 Catalog, Pontifical College Josephinum, 76-78, http://www.pcj.edu/files/4514/4794/4982/15-16catalog.pdf (accessed Mar. 16, 2017). It provides:

> The Family Educational Rights and Privacy Act of 1974, as amended, sets forth requirements designed to protect the privacy of student educational records. The law governs access to records maintained by educational institutions and the release of information from those records. A notice is given to enrolled students at the start of each fall semester to explain the rights of students with respect to records maintained by the college. It also outlines the college's procedures to comply with the requirements of the Act. http://www.ed.gov/policy/gen/guid/fpco/ferpa/index.html).

The catalog elsewhere discusses the use of federal financial aid funds at length. FERPA applies to institutions that accept federal funds including federal student aid. *Id.* at 67-69; *see* 20 U.S.C. 1232g(a)(1)(A); 34 C.F.R. 99.1(c)(2). The amended complaint also contains the allegation that "[o]n information and belief," the college receives federal funding.[1] (Amended Compl. at ¶ 14a).

{¶ 26} Notwithstanding the fact that FERPA applies to the college and supplies verbiage in the nature of "rights" of parents and students, FERPA does not provide students or their parents the private right of action. FERPA does, however, deny federal funding to schools unless their policies include FERPA rights. Each relevant section of FERPA begins substantially with the language, "[n]o funds shall be made available under any applicable program to," and then specifies the conditions a school or agency must meet to maintain funding. 20 U.S.C. 1232g(a)(1)(A) and (B), (a)(2), (b)(1) and (2), (e). For example, the act provides:

> *No funds shall be made available* under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents, the parents of students who are or have been in attendance at a school of such agency or at such institution, as the case may be, the *right to inspect and review the education* records of their children.

(Emphasis added.) 20 U.S.C. 1232g(a)(1)(A).[2]

{¶ 27} Based on the plain language of the statute, the consequence for failing to recognize FERPA rights is the denial of federal funds, not exposure to private suit. FERPA is enforced by the United States Secretary of Education, not by the individual legal action of an aggrieved student or parent:

> Enforcement; termination of assistance. The Secretary shall take appropriate actions to enforce this section and to deal with violations of this section, in accordance with this Act,

---

[1] No answer to the complaint has been filed which would have admitted or denied the allegation about federal funding.

[2] This provision of FERPA applies also to "eligible students," that is, students of legal age. 20 U.S.C. 1232g(d).

> except that action to terminate assistance may be taken only if the Secretary finds there has been a failure to comply with this section, and he has determined that compliance cannot be secured by voluntary means.

20 U.S.C. 1232g(f). Because the statute vests enforcement power in the Secretary and not the aggrieved individual, the United States Supreme Court (among numerous other courts) has held that FERPA does not create a private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).

{¶ 28} A student's or parent's recourse under FERPA is to "file a written complaint with the [Family Policy Compliance] Office regarding an alleged violation under the Act and this part." 34 C.F.R. 99.63. That office reviews and investigates the complaint in accordance with the regulations set forth in 34 C.F.R. 99.63 through 99.66 and in conjunction with the Office of Administrative Law Judges. 34 C.F.R. 99.60(c); 20 U.S.C. 1232g(g). The Secretary then enforces decisions in accordance with 34 C.F.R. 99.67.

{¶ 29} The action against the college is for the most part in contract and based on denying appellant access to his records in violation of the school's policies (created in accordance with FERPA) and is characterized as a breach of the contract between college and appellant. *See Frank v. Univ. of Toledo*, 621 F.Supp.2d 475, 485-86 (N.D.Ohio 2007). Generally, the relationship between a fee-paying student and a college is generally contractual and "[t]he terms of such contract are found in the college catalog and handbook supplied to students." *Lewis v. Cleveland State Univ.*, 10th Dist. No. 10AP-606, 2011-Ohio-1192, ¶ 14; *see also, e.g., Savoy v. Univ. of Akron*, 10th Dist. No. 13AP-696, 2014-Ohio-3043, ¶ 23. However, the college in its catalog explicitly provides there is no contract:

> The present catalog is not to be considered a contract between the Pontifical College Josephinum and the seminarian. The Josephinum reserves the right, at its discretion, to make changes in its educational, formational, or financial policies, as dictated by changing circumstances.

2015-16 Catalog at v. Even if the appellant understood the catalog to be a contract (as he alleges in his amended complaint at paragraph 12b), contracts typically require intent to be bound (meeting of the minds) by both parties. *Rayess v. Edn. Commn. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 19. Assuming that the appellant

has validly incorporated the entire course catalog into his amended complaint, the very document he seeks to enforce contains clear language that it is not to be construed as a contract.

{¶ 30} In short, the only secular argument according to the law of contract that appellant makes is obstructed by the terms of the very document he seeks to enforce.

{¶ 31} Appellant's amended complaint also exceeds the scope of an action to obtain records owed to him under FERPA, whether or not a contract to provide them exists. He has extended his breach of contract damages to include, for example, "[e]xpulsion and other sanctions [which] damage his academic and professional reputation," damage to his "ability to enroll at other institutions of higher education and pursue a career," and damage to his "employment prospects." (Amended Compl. at ¶ 45.) He also claims unjust enrichment in the college's late-imposed dismissal during his academic career, stating he has not "violate[d] any of the rules of the Church or the Josephinum." *Id.* at ¶ 59.

{¶ 32} The trial court had no recourse but to decline jurisdiction on First Amendment grounds; it was unable to consider the decision to expel appellant from the college. That decision (whether to retain a student at a Catholic school for training priests) was the quintessential "who should preach from the pulpit" decision and not a matter in which the secular sovereign should interfere. *Tibbs v. Kendrick*, 93 Ohio App.3d 35, 41-42 (8th Dist.1994), citing *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N.A.*, 344 U.S. 94 (1952). Since these claims are related to a review of the decision to expel him, an ecclesiastical decision, the trial court appropriately found it did not have jurisdiction.

{¶ 33} For these reasons, along with those stated by the majority, I concur with the decision of the majority.

_____